S98A0054. PRICE v. THE STATE.
(497 SE2d 797)

FLETCHER, Presiding Justice.

Jason Todd Price was convicted of the murder of Alicia Faircloth.[1] He contends that the trial court erred in allowing his former girlfriend to explain that she did not report the crime to police for

---

[1] The crime occurred on June 4, 1995, and Price was indicted on October 11, 1995. A jury found him guilty on March 22, 1996, and the trial court sentenced him to life imprisonment. Price filed a notice of appeal on April 12, 1996. The case was docketed in this court on September 23, 1997, and submitted for decision without oral arguments on November 17, 1997.

more than two months because she feared Price. Because the trial court did not abuse its discretion in admitting this relevant testimony, we affirm.

1. The evidence presented at trial shows that Faircloth disappeared during the early hours of June 4, 1995, after a fight with her boyfriend at a pool hall. On August 17, Price's girlfriend Taura King told a jail chaplain that she knew somebody who had been killed, where the body was, and who committed the murder. The next day, King helped police locate the skeletal remains of Faircloth.

King testified at trial that Price told her on June 4 that he had killed Alicia Faircloth by beating her to death with a brake rotor. Later that day, he showed the body, his bloodied clothes, and the brake rotor to King. Three other witnesses testified that Price told them that he had killed a girl by beating her to death with a brake rotor; Price identified Faircloth as the girl to one of the witnesses. Two of Price's friends testified that he "had the hots" for Faircloth and was in love with her. The pathologist testified that Faircloth died from a blunt force trauma to her head, the general curve of a brake rotor fit the skull fracture, and the condition of her skeleton in August was consistent with her being killed in June. Human blood was found in the trunk of Price's car.

Price's defense was that King killed Faircloth. In his taped statement to police, he said that King held a gun on him as she took the brake rotor and beat Faircloth repeatedly on the head. He also stated that King hid her clothes in the vent of their trailer, but police found only dust in the vent. After reviewing the evidence in the light most favorable to the jury's determination of guilt, we conclude that a rational trier of fact could have found Price guilty of the crime charged.[2]

2. In a pre-trial hearing, the trial court ruled that King could testify that she delayed reporting the crime to police because she was afraid of Price. At trial, she testified that her relationship with Price, which was not good before June 4, grew worse after the murder. Price hit her two or three times a day until she moved out of the trailer two weeks later. Price contends that this evidence of physical violence improperly placed his character into evidence.

Whether to admit evidence is a matter that rests in the sound discretion of the trial court. Evidence that is relevant and material to an issue in the case is not made inadmissible because it incidentally places the defendant's character in issue.[3] In this case, the state did

---

[2] *Jackson v. Virginia*, 443 U.S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] *Holcomb v. State*, 268 Ga. 100, 104 (485 SE2d 192) (1997) (testimony that victim had stolen drugs from defendant and thus owed defendant money is admissible to establish motive for crime); *Baxter v. State*, 254 Ga. 538, 546 (331 SE2d 561) (1985) (although jail

not present the evidence of the violent relationship between Price and his girlfriend to show his propensity for violence. Instead, the state offered the testimony to explain the girlfriend's ten-week delay in reporting the murder to police. The witness's testimony was not likely to confuse the main issue at trial or mislead the jury, and it did not cause undue delay since it occupies less than a page of the transcript from the five-day trial.[4] Because the probative value of the testimony in explaining the witness's delay in reporting the crime outweighs its prejudicial effect in showing the defendant's propensity for violence, we conclude that the trial court did not abuse its discretion in admitting the testimony into evidence.

3. At the pre-trial hearing the trial court also ruled that the state could present testimony from another trailer park resident who heard Price tell Faircloth four days before her death, "I'll have you or nobody will." Considering the criteria set out in *Maxwell v. State*[5] and *Stewart v. State*,[6] the trial court found that the incident was presented to show the defendant's state of mind, the defendant was the person who made the threat, and there was a sufficient connection between the threat on June 1 and the murder on June 4 so that the threat tended to prove the murder. We agree that this threat was admissible under the *Maxwell* test.[7]

4. Price further contends that the trial court erroneously disallowed evidence of a voice stress analysis that showed King was deceptive in responding to questions about her role in Faircloth's murder. We have previously held that the results of truth-detecting devices are inadmissible unless the procedure has reached a scientific stage of verifiable certainty as demonstrated by exhibits, treatises, cases, or expert testimony.[8] Since Price presented no evidence that the procedure has been established with verifiable certainty and admitted that other jurisdictions generally have not allowed voice stress tests into evidence, the trial court correctly ruled that the test results were inadmissible.

5. Finally, Price contends that the trial court erred in admitting photographs that were cumulative and other exhibits that were prejudicial. Having reviewed this evidence, we find the trial court did not

---

inmate's statement placed defendant's character in issue by showing defendant was in jail on an unrelated charge, testimony was independently relevant to explain the circumstances leading to the "jailhouse confession").

[4] See *Mitchell v. State*, 207 Ga. App. 306, 307 (427 SE2d 814) (1993).

[5] 262 Ga. 73, 74 (414 SE2d 470) (1992).

[6] 266 Ga. 1 (463 SE2d 493) (1995).

[7] Id. at 2 (evidence that defendant threatened to kill the victim four days before her death admissible under *Maxwell* standards).

[8] See *Harper v. State*, 249 Ga. 519 (292 SE2d 389) (1982) (rejecting results of truth serum test); *State v. Chambers*, 240 Ga. 76 (239 SE2d 324) (1977) (results of polygraph examination inadmissible except by stipulation of the parties).

abuse its discretion in admitting the photographs and exhibits. *Judgment affirmed. All the Justices concur.*

DECIDED APRIL 13, 1998.

*Meadows & Futch, Gregory A. Futch,* for appellant.

*Tommy K. Floyd, District Attorney, Sandra A. Graves, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Deborah L. Gale, Assistant Attorney General,* for appellee.