**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**March 13, 2014**

# In the Court of Appeals of Georgia

A13A2394. THE STATE v. OLIVER.

MCFADDEN, Judge.

After a jury trial, Stanley James Oliver was convicted of kidnapping with bodily injury, rape, and aggravated assault of his former girlfriend, F. W. At trial, the state had elicited testimony from F. W. about Oliver's earlier acquittal on charges of similar crimes against another person. Oliver moved for a new trial on the ground that the trial court erred in allowing this testimony, among other reasons. A different trial judge considered the motion and granted Oliver a new trial on that ground. The state appeals.

As detailed below, we find that F. W.'s testimony was admissible. It was not collaterally estopped by the earlier acquittal, was relevant to an issue that Oliver had raised in his cross-examination of F. W., and only incidentally placed Oliver's

character in issue. We further find that the trial court's earlier ruling on a motion in limine did not preclude the testimony. For these reasons, the trial court did not err in allowing the testimony at trial, and the admission of the testimony was not a ground for the grant of a new trial. We therefore reverse.

1. *Facts and procedural background.*

The state charged Oliver with committing the offenses of kidnapping with bodily injury, rape and aggravated assault during a period of time between March 8 and March 12, 2008. At trial, F. W. testified on direct examination that she had a previous relationship with Oliver and that he had become violent with her on at least one occasion before March 8, but that she had not reported his violent acts to law enforcement. She testified that she was afraid of Oliver. On March 8, she agreed to go with Oliver to his house. She testified that Oliver then held her captive in the house for several days, beating her, stabbing her, hitting her with a fireplace poker, ripping out some of her hair, and threatening to kill her. At one point during her captivity she had sexual intercourse with him in the hope that this would enable her to escape. F. W. finally escaped the house on March 12.

Oliver's defense strategy centered on questioning F. W.'s credibility and her account of what took place at Oliver's house between March 8 and March 12. To that

end, Oliver's counsel questioned F. W. on cross-examination about her failure to call law enforcement on the earlier occasion when Oliver beat her.

At a bench conference before redirect, the state argued that Oliver's counsel had opened the door for F. W. to testify about what Oliver had told her about a "prior that he was acquitted of . . . and how that related to her not calling the police." This referred to Oliver's earlier acquittal on charges of crimes against another person, P. M. Oliver's counsel denied opening the door to testimony about the prior acquittal. The trial court stated, "Yeah. I think he's right." Although ambiguous on the cold record, the trial court's statement appears from the context to have been a ruling in favor of the state, which proceeded on redirect to ask the following questions:

> Q. [Oliver's counsel] said that either you and your mother, or maybe your mother, knew about Mr. Oliver's history with women. You remember that question?
>
> . . .
>
> A. Yes, sir.
>
> Q. And something to the effect he had a history of doing this to women. Do you remember that question?
>
> A. (Nods head affirmative[ly.])

Q. And [Oliver's counsel] also asked you about why you didn't report that first, those first bruises, you didn't report that to law enforcement. You remember that?

A. (Nods head affirmative[ly.])

Q. Did Mr. Oliver tell you anything about [P. M.]?

. . .

A. Yes, sir.

Q. . . . What did he tell you about [P. M.]?

A. He just – He didn't tell me nothing straight out about [P. M.]. But, but I heard 'em talking about getting by with what he did to her. They were all sitting around laughing about beating the system.

Q. Okay. And --

A. And so I knew he'd done got by with it. And that it was just gonna be trouble.

Q. Did that have an effect on you and cause you – Did that influence your decision not to call law enforcement the first time?

A. Yes, sir.

4

Q. Okay. And, in fact, he faced charges for doing similar things to [P. M.], is that right?

A. Yes, sir.

Q. But a jury found him not guilty?

A. Yes, sir.

Q. Jury said he didn't do that.

A. (Nods head affirmative[ly.])

Q. But you knew that he had been found not guilty of those same things and you were taking all that into consideration didn't you?

A. (Nods head affirmative[ly.])

Q. Did he tell you anything while you were at his home from March 8th to March 12th about the trial of [P. M.]?

A. Just that they were like no –

[Discussion between trial court and counsel that they could not hear F. W.'s response.]

Q. And again, [Oliver's counsel] asked you some questions about why you didn't report this. You remember those questions?

. . .

A. Yes, sir.

Q. Did Mr. Oliver ever tell you of plans he had of things to do to [P. M.,] the woman who had testified against him?

A. Yes, sir.

Q. What were those plans and what did he tell you?

. . .

A. He was gonna nail their door shut and burn them out.

Q. What about did he tell you anything about what he would do if he were convicted of those offenses?

A. He said that he would get the – the jailer's gun and shoot her.

Q. Okay. Did that influence you in deciding not to report that first incident?

A. Yes, sir.

Oliver cited the trial court's decision to allow the above testimony as one of the grounds for his motion for new trial. A different judge heard argument on the motion and agreed with Oliver that the jury should not have heard the testimony about the prior acquittal, in part because he found that the evidence was precluded by the trial court's ruling on a motion in limine. That earlier ruling provided that the state would instruct its witnesses not to mention Oliver's "record and incarceration" and that if the state felt Oliver had opened the door on that issue the state would first seek permission from the trial court before questioning its witnesses on it. In granting Oliver a new trial, the new judge found that Oliver's counsel had not opened the door to testimony on the acquittal through his cross examination of F. W.

2. *Standard of review.*

As an initial matter we consider our standard of review. We are reviewing the trial court's decision to grant a new trial to Oliver on the ground that the testimony about the prior acquittal was inadmissible. In his ruling, the substitute trial judge acknowledged that this was a purely legal issue, and he did not receive any evidence or make any findings of fact on the issue. Under these circumstances, we do not apply the standard of review codified in OCGA § 5-5-50 ("The first grant of a new trial

7

shall not be disturbed by an appellate court unless the appellant shows that the judge abused his discretion in granting it and that the law and facts require the verdict notwithstanding the judgment of the presiding judge."). See *O'Neal v. State*, 285 Ga. 361, 363 (677 SE2d 90) (2009). Instead, we review the decision on the motion for new trial de novo. Id. Compare *Ford Motor Co. v. Conley*, __ Ga. __, __ (2) n. 7 (__ SE2d __) (Case No. S13A1601, decided Feb. 24, 2014) (explaining that de novo standard does not apply to appellate review of the grant of an extraordinary motion for new trial that presented mixed questions of law and fact and on which the trial court had made factual findings).

In determining whether the trial court erred in ruling on the motion, we must consider the nature of the trial error that Oliver claimed warranted him a new trial. That claimed error involved the trial court's admission of evidence, a matter that was within the trial court's discretion. See *Jordan v. State*, 293 Ga. 619, 622 (2) (a) (748 SE2d 876) (2013). Consequently, although we review de novo the ruling on the motion for new trial, in doing so we review for abuse of discretion the trial court's initial decision to allow the testimony about Oliver's acquittal.

3. *Admissibility of testimony about prior acquittal on similar charges.*

(a) *Collateral estoppel.*

8

A state is collaterally estopped from "offer[ing] proof that a defendant committed a specific crime which a jury of that sovereign has concluded that he did not commit." *Moore v. State*, 254 Ga. 674, 675 (333 SE2d 605) (1985) (citation omitted); see *Culliver v. State*, 247 Ga. App. 877, 880 (3) (545 SE2d 392) (2001) (where prior trial resulted in acquittal of defendant on false imprisonment charge and mistrial on two other charges, on retrial collateral estoppel precluded testimony that defendant had grabbed victim as she tried to get away from him). Nevertheless, "there is not a per se rule prohibiting any evidentiary use of an independent offense where an acquittal was obtained; instead, the doctrine of collateral estoppel requires an examination of what facts were in issue and necessarily resolved in the defendant's favor at the first trial." *Faniel v. State*, 291 Ga. 559, 562 (2) (731 SE2d 750) (2012) (citation omitted).

The state, however, did not offer proof that Oliver actually committed the specific crimes against P. M. of which he had been acquitted; it offered proof that Oliver made comments to F. W. that led her to think that he had committed those crimes and gotten away with them, which deterred her from contacting law enforcement when Oliver physically abused her. Whether Oliver actually committed the crimes against P. M. was not dispositive of the issues in this case. Whether F. W.

9

was led to believe Oliver had committed those crimes, on the other hand, was relevant. Accordingly, the fact that the state sought to prove through F. W.'s testimony about the acquittal was not Oliver's guilt of the prior crimes, but F. W.'s belief regarding his guilt. Because the acquittal did not adjudicate the issue of F. W.'s belief, the state was not collaterally estopped from introducing this testimony.

(b) *Bad character evidence.*

Oliver argues that the testimony referring to the prior acquittal was inadmissible bad character evidence. Under former OCGA § 24-2-2, which was in effect at the time of Oliver's 2008 trial, "[t]he general character of the parties and especially their conduct in other transactions are irrelevant matter unless the nature of the action involves such character and renders necessary or proper the investigation of such conduct."

F. W.'s testimony can be construed as character evidence. The prosecutor asked F. W., "he [Oliver] faced charges for doing similar things to [P. M.], is that right," to which she responded, "Yes, sir." Although the prosecutor then pointed out that Oliver had been acquitted of those charges, the fact that Oliver was charged with and prosecuted for those crimes in the first place negatively reflected on his character. See *Morrow v. State*, 229 Ga. App. 242, 245 (4) (493 SE2d 616) (1997) (where state no

10

longer was pursuing two counts against defendant, it was error to send out with jury an unredacted copy of indictment referring to those two counts because they "impermissibly reflect[ed] on defendant's character").

Nevertheless, "[e]vidence that is relevant and material to an issue in the case is not made inadmissible because it incidentally places the defendant's character in issue." *Price v. State*, 269 Ga. 373, 374 (2) (497 SE2d 797) (1998) (citations omitted). And as the state argues, the challenged testimony was relevant to explain F.W.'s conduct in the period leading up to March 8, after Oliver's counsel on cross-examination questioned her failure to notify law enforcement about Oliver's prior violent acts against her. See *Mims v. State*, 314 Ga. App. 170, 174 (2) (723 SE2d 486) (2012) (witness's testimony to explain conduct that had been called into question on cross-examination was relevant to issues at trial). This was a permissible ground for admitting the evidence at trial, even though it implicated Oliver's character. See *Price*, 269 Ga. at 374-375 (2) (trial court did not abuse its discretion in allowing defendant's girlfriend to testify about defendant's violent behavior toward her to explain why she delayed reporting a murder he committed); *Borders v. State*, 285 Ga. App. 337, 340-341 (2) (646 SE2d 319) (2007) (trial court did not abuse its discretion in allowing investigating detective's testimony that molestation victim told him she

11

had witnessed defendant hitting her mother, where state sought to use testimony to explain why victim delayed in reporting molestation, an issue that had first been raised by defendant). The trial court did not abuse its discretion in allowing the testimony. See *Jordan*, 293 Ga. at 622 (2) (a).

4. *Motion in limine.*

The trial court's earlier ruling on the motion in limine provides no ground for a grant of new trial. Although the state and Oliver dispute whether that ruling encompassed the acquittal testimony, the state clearly abided by that ruling when it sought permission from the trial court before eliciting the testimony on redirect examination. And a trial court may modify its ruling on a motion in limine. *Bradford v. State*, 274 Ga. App. 659, 661 (3) (618 SE2d 709) (2005).

*Judgment reversed. Doyle, P. J., and Boggs, J., concur.*

April 2, 2014

ON MOTION FOR RECONSIDERATION

Oliver seeks clarification that our ruling does not address the merits of grounds upon which he sought a new trial but which the trial court expressly did not consider in ruling on the motion. Pertinently, the trial court's order on Oliver's motion for new trial states that, "[b]y agreement of the parties, the motion has been bifurcated for presentation and decision into those issues of a purely legal nature and those requiring an evidentiary hearing." In granting the motion for new trial, the trial court ruled only on the legal issues, and the record makes clear that the trial court, Oliver, and the state contemplated that if the trial court denied the motion on the legal issues they then would proceed to address the remaining issues that required an evidentiary hearing. Our reversal of the trial court's grant of Oliver's motion for new trial does not address or affect the merits of those remaining issues, which the trial court has not yet heard or decided.