**FIFTH DIVISION**
**PHIPPS, P. J.,**
**DILLARD and PETERSON, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**May 2, 2016**

# In the Court of Appeals of Georgia

A16A0096. OLIVER v. THE STATE                                    PE-003C

PETERSON, Judge.

After a jury trial, Stanley James Oliver was convicted of kidnapping with bodily injury, rape, and aggravated assault of his former girlfriend, F. W. He appeals the denial of his motion for a new trial, arguing that his counsel was ineffective for (1) failing to subpoena Oliver's telephone records for potential use at trial; (2) opening the door to admission of evidence of Oliver's acquittal on prior charges; and (3) failing to request a limiting instruction on that prior bad acts evidence. Because trial counsel's questioning that opened the door to admission of Oliver's prior acquittals did not constitute deficient performance, and because the other complained-of actions by defense counsel did not create a reasonable probability of a different outcome, we affirm.

"On appeal, the evidence must be viewed in the light most favorable to support the verdict, and the appellant no longer enjoys a presumption of innocence." *Culver v. State*, 230 Ga. App. 224, 224 (496 SE2d 292) (1998) (citation omitted). So viewed, F. W. had been romantically involved with Oliver but broke off contact with him after he became violent with her on at least one occasion in February 2008. On March 8, 2008, Oliver came to F. W.'s mother's house, where F. W. was staying, and she went with him to his home. F. W. testified that Oliver indicated he "wanted to talk" and "work things out" but she went with him because she was scared. She testified that she remained at the house until March 12, smoking methamphetamine with Oliver but having no food or drink during that time. Oliver took the battery from F. W.'s phone. Shortly after F. W. arrived at Oliver's house, two visitors came over, but F. W. didn't seek help from them because she "didn't think that it was gonna get as bad as it got." The following day, however, Oliver began beating her, hitting her with his fists, a strap and a fireplace poker, ripping out some of her hair, and threatening to kill her. When F. W. would fall off a couch, he would hit her again and tell her to get back on the couch and not move. At one point, F. W. approached the door to the home, and Oliver stabbed her in the leg with a knife. On her last night in the home, F. W. and Oliver had sexual intercourse; she testified that she did not want to but "thought that

2

was the only way I was gonna get to leave." On March 12, while Oliver was in the bathroom, F. W. saw her mother's car in the driveway and left with her.

F. W. went to a hospital, where she underwent a medical examination and received treatment. The sheriff's deputy who was dispatched to the hospital testified that F. W. was "contused from head to foot," with a large patch of hair having been pulled out of her scalp, a puncture wound in her thigh, and various lacerations and abrasions over her body. A Georgia Bureau of Investigation agent took pictures of F. W.'s injuries that were entered into evidence. Agents who investigated the scene at Oliver's home recovered a fire poker, leather strap and knife. They also found a large clump of hair that was shown to have been forcibly removed from F. W.'s head.

Oliver defended himself through extensive cross-examination of F. W., testimony by friends, and his own testimony. Several defense witnesses gave testimony to the effect that they had seen F. W. during the time period in question and she did not appear held against her will. Defense witnesses testified in particular that during that time F. W. mentioned plans to marry Oliver and had several personal items such as toiletries at his home.

Oliver testified that on March 8, 2008, he telephoned F. W., invited her to go out to a bar, and picked her up near her mother's home, per her instructions. Oliver

testified that F. W. never asked to be let out of the house and the two left his house at least once during her visit. He denied stabbing her with the knife, hitting her with his fists or the fire poker or strap that were in evidence, or pulling out her hair. Oliver said that at one point F. W. left the house and came back looking as though she had been in a fight and suggested that her injuries were caused by another man. Oliver declined to dispute that the clumps of hair found in his home belonged to F. W. He said he and F. W. had consensual sex multiple times during her visit and denied that he raped her.

Oliver was convicted on all counts at trial. He moved for a new trial, arguing, among other things, that the trial judge had erred in allowing F. W. to testify about Oliver's earlier acquittal on similar crimes against another person. The judge who considered his motion for new trial (not the judge who presided over the trial)[1] granted Oliver a new trial on that ground. We reversed, with the clarification that our ruling did not affect the motion judge's ability to consider remaining issues raised in the motion for new trial. *State v. Oliver*, 326 Ga. App. 759 (755 SE2d 293) (2014).

---

[1] The case apparently was transferred from the trial judge to a different judge after trial. For clarity, we will refer to the judge who presided over the trial as the "trial judge" and the judge who ruled on the motion for new trial as the "motion judge."

The motion judge subsequently considered, and rejected, Oliver's claims of ineffective assistance of counsel. That is the ruling before us now.

In order to prevail on an ineffective assistance of counsel claim, Oliver "must show that trial counsel's performance fell below a reasonable standard of conduct and that there existed a reasonable probability that the outcome of the case would have been different had it not been for counsel's deficient performance." *Scott v. State*, 290 Ga. 883, 889 (7) (725 SE2d 305) (2012) (*citing Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984)). In reviewing a claim of ineffective assistance, the appellate courts give deference to the lower court's factual findings and credibility determinations unless clearly erroneous, but review a lower court's legal conclusions de novo. *Grant v. State*, 295 Ga. 126, 130 (5) (757 SE2d 831) (2014) (citation omitted).

1. Oliver first argues that his trial counsel's failure to subpoena Oliver's telephone records for possible use at trial amounted to ineffective assistance of counsel. We disagree.

The phone records in question apparently would have shown that F. W. made telephone calls to Oliver in the days leading up to the kidnapping. The records also appear to show calls back and forth between the two on March 8, the day F. W. says

5

Oliver picked her up at her mother's home. At the motion for new trial hearing, trial counsel testified that those records would have been helpful to rebut F. W.'s testimony that she had not had "consensual contact" with Oliver in the weeks leading up to the incident, did not call him or answer his calls, and was surprised when he showed up at her mother's home. The defense also suggests on appeal that the State's case would have been rebutted by phone record entries showing that Oliver placed calls on his phone while outside of his home during the weekend that F. W. claimed she was being involuntarily held there. Although counsel introduced Oliver's cell phone into evidence at trial, he did not pursue any questioning about its call log, apparently because the battery was dead. The motion judge rejected Oliver's claim of ineffectiveness on this basis, finding that counsel's performance in failing to subpoena the records was not deficient, but strategic, in the light of trial counsel's testimony that he thought the defense had "overwhelming evidence" that Oliver and F. W. were "living as man and wife."

The motion judge's conclusion that trial counsel made a strategic decision not to use the records because he had enough other evidence to make the defense case is undermined by trial counsel's apparent failed attempt to present evidence about the phone calls using Oliver's phone itself. But, assuming without deciding that trial

6

counsel's performance was deficient in this regard, we find that there is not a reasonable probability that the outcome of the case would have been different had counsel obtained and introduced the records. Although F. W.'s credibility was an important issue at trial, the considerable physical evidence corroborating F. W.'s testimony — and rebutting Oliver's — kept this case far from the kind of "he said, she said" credibility contest in which we might find prejudice. *See State v. Crapp*, 317 Ga. App. 744, 748 (2) (732 SE2d 806) (2012) (failure to introduce available documents corroborating defendant's testimony prejudicial where trial was "pure credibility contest" with State's case "resting largely upon the identification testimony of one witness"). F. W. presented at the hospital with bruising all over her body, a large clump of hair missing, and a wound in her leg, supporting her claim that Oliver had assaulted her, including stabbing her when she tried to leave his home. Police found at Oliver's home clumps of F. W.'s hair, and the items she claimed Oliver had assaulted her with. This is not a "he said, she said" case, but a "he said, she said, with a lot of physical evidence corroborating what she said" case. *See generally Wallace v. State*, 294 Ga. 257, 260 (3) (b) (754 SE2d 5) (2013) (considering strength of State's case in evaluating whether prejudice is shown).

Once the jury concluded, based in part on this physical evidence, that Oliver was lying when he denied assaulting F. W. or keeping her in his home, it also was entitled to disbelieve his claim that their sexual activity was consensual. Although the phone records might have tended to show that events did not transpire exactly as F. W. had claimed — i.e., that she may have been in contact with him more than she admitted, or that Oliver left the home at some point during the time she was staying at his house — they did not refute the core claims at issue: that Oliver had assaulted and raped F. W. and, for at least some period of time, held F. W. against her will. *See Crapps v. State*, 329 Ga. App. 820, 827 (3) (a) (766 SE2d 178) (2014) (no prejudice given that phone records that allegedly showed victim repeatedly phoned defendant prior to the incident would not refute evidence showing that defendant harassed and intimidated victim on the evening in question). Any deficient performance by counsel in failing to obtain or present Oliver's phone records did not prejudice the defense to the extent required to merit reversal.

2. Oliver next argues that his trial counsel was ineffective when he opened the door to admission of the evidence of Oliver's earlier acquittal on similar charges involving a different victim. We disagree.

The evidence of the earlier acquittal was the subject of the prior appeal in this case, in which we held that the trial judge had not erred in admitting the evidence. *See Oliver*, 326 Ga. App. at 763-64 (3). The admission of the evidence came during the testimony of F. W., after Oliver's counsel questioned her about her failure to call law enforcement on the earlier occasion when, she claimed, Oliver beat her. The State successfully argued that Oliver's counsel had opened the door for F. W. to testify about what Oliver told her about the prior charges of which he was acquitted and how that related to her failure to call the police. *Id.* at 759-60 (1). On redirect, F. W. testified that Oliver had been acquitted on similar charges, she had overheard some conversation indicating that Oliver was, in fact, guilty of those charges, and that the acquittal had influenced her not to contact police. *Id.* at 760-61 (1). In particular, F. W. testified that, regarding the woman who had testified against him in the other case, Oliver had told F. W. that he "was gonna nail their door shut and burn them out." *Id.* at 761. F. W. also testified that Oliver had said that if he were convicted of the prior offenses, he would "get the . . . jailer's gun and shoot" the woman who had testified. *Id.* Defense counsel did not request a limiting instruction and one was not given by the trial judge. Rejecting Oliver's claim that opening the door to this line of questioning by the State amounted to ineffective assistance of counsel, the motion

9

judge found that a central part of the defense strategy was attacking F. W.'s credibility, including her failure to report Oliver's previous uncharged offenses against her, and that the strategy was a reasonable one.

The motion judge's conclusion that questioning F. W. about her failure to report the earlier beating was strategic is not clearly erroneous. Although trial counsel moved in limine to exclude evidence of Oliver's prior encounters with the criminal justice system and testified that opening the door to the admission of prior bad acts was not part of a strategic plan, he also testified that attacking F. W's credibility was of "paramount importance."

Whether an attorney's trial tactics are reasonable is a question of law, not fact. *Jefferson v. Zant*, 263 Ga. 316, 318 (3) (a) (431 SE2d 110) (1993). And in assessing the objective reasonableness of a lawyer's performance, we are not limited to the subjective reasons offered by the trial court for his conduct; "[i]f a reasonable lawyer might have done what the actual lawyer did — whether for the same reasons given by the actual lawyer or for different reasons entirely — the actual lawyer cannot be said to have performed in an objectively unreasonable way." *Hughley v. State*, 330 Ga. App. 786, 791-92 (4) (769 SE2d 537) (2015). We agree with the motion judge that questioning F. W. about her prior failure to contact law enforcement was a

10

reasonable strategy. How to conduct cross-examination is a tactical decision within the exclusive province of counsel. *Mack v. State*, 242 Ga. App. 256, 258 (2) (c) (529 SE2d 393) (2000). We can see few avenues of defense in this case other than challenging F. W.'s story by attacking her credibility.

Moreover, it was not a foregone conclusion that trial counsel's questioning was going to result in admission of Oliver's acquitted charges. Although the State's lawyer had elicited on direct examination F. W.'s testimony that she did not call police after the earlier incident because she was afraid of Oliver, defense counsel did not ask F. W. about the source of her fear. Instead, he confirmed her earlier testimony that she had not reported the matter due to fear, questioned her about her mother's failure to report the incident, then sought to undermine her story by asking about her lack of documentation of her injuries and the steps she would have had to take to hide them from others. We ultimately ruled that this opened the door to admission of the prior acquittals, but the motion judge's earlier ruling to the contrary indicated that reasonable minds can differ on this point. *Cf. Marshall v. State*, 275 Ga. 740, 745 (10) (571 SE2d 761) (2002) (not deficient performance where it would not have been unreasonable for counsel to believe that questioning would not open the door to the introduction of defendant's prior conviction). "[T]actical decisions, even if they

11

misfire, do not generally equate with ineffectiveness." *Crawford v. State*, 252 Ga. App. 722, 725 (3) (556 SE2d 888) (2001).

3. Oliver also argues that his trial counsel was ineffective in that he failed to request a limiting instruction once evidence of the prior charges against Oliver were admitted. We disagree.

Oliver suggests that his lawyer should have asked for an instruction that the jury should consider the evidence of the acquittal only for its effect on F. W.'s state of mind. The motion judge found that trial counsel performed deficiently in this regard. On appeal, the State effectively concedes that trial counsel's performance was deficient, in the light of the motion judge's factual finding that trial counsel had offered up no strategic reason for not requesting a limiting instruction. But the State argues that the motion judge correctly concluded that any deficiency in failing to ask for a limiting instruction did not prejudice the defense.

As suggested by the State's concession, the evidence supports the motion judge's finding that there was no strategy involved in failing to request a limiting instruction. Asked whether he could think of any strategic reason why he would not have wanted a limiting instruction, trial counsel replied that he "felt absolutely overwhelmed" when the motion judge ruled that the evidence would be admitted.

12

*Compare Phillips v. State*, 285 Ga. 213, 220 (5) (c) (675 SE2d 1) (2009) (no ineffectiveness where counsel testifies he did not request a limiting instruction because such an instruction might draw attention to the evidence); *but see Hughley*, 330 Ga. App. at 791-92 (assessment of objective reasonableness of lawyer's performance not limited to subjective reasons offered by trial counsel).

However, assuming without deciding that trial counsel performed deficiently by failing to request the instruction, we agree with the State that this failure was not prejudicial. As discussed in Division 1, the evidence against Oliver was strong. *See Wallace*, 294 Ga. at 260 (3) (b). Moreover, the State did not bring out the specific facts of the underlying charges, merely eliciting testimony that Oliver had faced similar charges involving another female victim. Failure to request a limiting instruction was deemed not prejudicial in *Wallace*, even though it was a prior *conviction* that was at issue. *See id.* (no prejudice in failure to request limiting instruction when evidence was relevant to the indicted charge, the State did not bring out the specific facts of the underlying conviction, offense of prior conviction was not one likely to inflame jury's passions, and the evidence against the defendant was strong). The prejudicial effect of an acquittal, put before the jury here, would have been even less. "Since there is no reasonable probability that the outcome of the trial

13

would have been different if counsel had requested the limiting instruction, the [motion judge] correctly denied [Oliver]'s claim of ineffective assistance of counsel." *Freeman v. State*, 269 Ga. App. 435, 440 (3) (c) (604 SE2d 280) (2004).[2]

*Judgment affirmed. Phipps, P. J., and Dillard, J., concur.*

---

[2] We have assumed for the sake of analysis that trial counsel performed deficiently in multiple ways. Given the totality of the evidence before the jury and the strong record support for the verdict, even assuming that trial counsel had performed deficiently both by failing to subpoena Oliver's telephone records and by failing to request a limiting instruction, there is no reasonable probability that the outcome of the trial would have been different. *See Daughtry v. State*, 296 Ga. 849, 862 (2) (k) (770 SE2d 862) (2015).