**SECOND DIVISION**
**MILLER, P. J.,**
**ANDREWS and SELF, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 7, 2018**

# In the Court of Appeals of Georgia

A18A0333. RAY v. STATE.

ANDREWS, Judge.

A jury found James Roy Ray guilty of rape and two counts of sexual battery. The trial court denied Ray's motion for new trial, and he appeals, challenging several evidentiary rulings and asserting that he received ineffective assistance of counsel at trial. Although we find no merit in many of Ray's arguments, two of his claims require additional consideration below. Accordingly, we vacate the order denying his motion for new trial and remand for further proceedings.

Viewed favorably to the jury's verdict, the evidence shows that the victim, a mentally challenged adult, lived with her aunt and several cousins. Ray, who was also related to the victim, visited the home on occasion, and the family spent time at his

house, as well. In December 2009, the victim disclosed to a family member that Ray had assaulted her. The victim's aunt reported the disclosure to the police.

During the ensuing investigation, the victim submitted to a forensic interview and described several instances of sexual abuse by Ray. The victim confirmed that abuse at trial, testifying that on various occasions Ray had inserted his "boy part" into her "girlie part," touched her "girlie part" with his tongue and finger, placed a sex toy on her "girlie part," and touched her breast with his tongue. She further testified that Ray never asked whether he could touch her, that she did not want to have sexual relations with him, and that the encounters made her feel dirty.

1. Ray argues that the trial court erred in admitting a video recording of the victim's December 29, 2009 forensic interview, which was played for the jury during the forensic interviewer's testimony, after the victim had testified. Ray objected to the video's admission, characterizing the evidence as hearsay that improperly bolstered the victim's credibility. The trial court disagreed with this characterization, finding the video admissible as a prior consistent statement. On appeal, we review this determination for abuse of discretion. See *Kidd v. State*, 292 Ga. 259, 260-261 (2) (736 SE2d 377) (2013).

2

OCGA § 24-6-613 (c) governs the admissibility of prior consistent statements. Pursuant to that provision:

> A prior consistent statement shall be admissible to rehabilitate a witness if the prior consistent statement logically rebuts an attack made on the witness's credibility. A general attack on a witness's credibility with evidence offered under Code Section 24-6-608 or 24-6-609 shall not permit rehabilitation under this subsection. If a prior consistent statement is offered to rebut an express or implied charge against the witness of recent fabrication or improper influence or motive, the prior consistent statement shall have been made before the alleged recent fabrication or improper influence or motive arose.

The trial court concluded that the video recording rebutted an express or implied charge that prosecutors or family members had improperly influenced the victim's testimony. We find no error. One relative admitted on cross-examination that she had discussed the victim's testimony with the victim shortly before trial. Another relative noted that the victim was "pretty easily suggestible," will "answer yes to things even if she . . . doesn't really mean yes," and "wants to make the people around her happy." The victim also conceded that she had discussed her testimony and practiced her responses with personnel from the district attorney's office.

3

Ray's primary defense at trial was that various individuals had convinced the mentally-disabled victim to fabricate the allegations against him. He certainly claimed that the victim was influenced before the December 29, 2009 interview. But through his cross-examination of the victim and other witnesses, Ray also intimated that relatives and state officials had influenced her trial testimony *after* the interview occurred. The trial court appropriately admitted the prior consistent statement to rebut Ray's implied charge of recent undue influence. See OCGA § 24-6-613 (c); *Bolling v. State*, 300 Ga. 694, 701 (3) (797 SE2d 872) (2017) (prior consistent statement admissible where defense implicitly argued that witness had motive to lie that arose after statement was given).

2. Next, Ray claims the trial court erred in excluding evidence that the victim, who was 38 years old when the trial took place, had been sexually abused when she was approximately 14 years old. In particular, Ray wanted to establish that the victim was raped by her brother, whom the family later allowed to live near the victim. According to defense counsel, this evidence was relevant to impeach the credibility of the victim's cousin and primary care-giver at the time of trial, who asserted that she sought to keep the victim safe from sexual predators. The trial court disagreed, deeming the evidence irrelevant.

We find no reversible error. The trial court prevented Ray from linking the brother's criminal history to the victim. But Ray established through cross-examination that the brother was a registered sex offender who was briefly allowed to live near the victim on her care-giver's property. He thus successfully presented evidence that called the care-giver's credibility into question and placed a sex offender close to the victim. Even if further information about the brother's abuse was relevant to impeach the care-giver, we find it highly probable that exclusion of this evidence did not affect the verdict. See *Nix v. State*, 280 Ga. 141, 145 (5) (625 SE2d 746) (2006) (highly probable that exclusion of cumulative evidence did not impact verdict). Although Ray now argues that particular testimony by other witnesses opened the door for admission of this evidence on other grounds, he has not shown that he raised these arguments at trial, and we will not consider them for the first time on appeal. See *Prince v. State*, 257 Ga. 84, 86 (3) (355 SE2d 424) (1987) (appellate court will not consider argument regarding admissibility of evidence raised for first time on appeal).

3. Ray also raises several ineffective assistance allegations, asserting that errors by his defense team entitle him to a new trial. To establish ineffective assistance, Ray must demonstrate that "trial counsel's performance fell below a reasonable standard

5

of conduct and that there existed a reasonable probability that the outcome of the case would have been different had it not been for counsel's deficient performance." *Oliver v. State*, 337 Ga. App. 90, 92 (786 SE2d 701) (2016) (citation and punctuation omitted).

(a) According to Ray, trial counsel unreasonably opened the door to admission of the victim's forensic interview by suggesting, through cross-examination, that the victim's testimony had been improperly influenced. We disagree. "How to conduct cross-examination is a tactical decision within the exclusive province of counsel." *Oliver*, supra at 95 (2). And "[t]actical decisions, even if they misfire, do not generally equate with ineffectiveness." Id. (citation and punctuation omitted). As noted above, Ray's primary defense was that various individuals influenced the victim to fabricate the sexual abuse allegations. This defense strategy, as well as counsel's efforts to raise questions about improper influence, were reasonable. See id.

(b) We also find no deficient performance with respect to the trial court's jury instructions. Ray claims that trial counsel should have objected to the court's instruction on the elements of force because it did not reference the reasonable doubt standard. The trial court, however, defined and discussed reasonable doubt at length

during its charge, noting the State's burden of proof on multiple occasions. Because the charge as a whole properly informed the jury about the reasonable doubt standard, trial counsel was not deficient in failing to object to the cited instruction. See *Sullivan v. State*, 242 Ga. App. 613, 615 (4) (530 SE2d 521) (2000) ("A trial court does not err in failing to give an appropriate request to charge, as written, when its charge as a whole contains the same principles of law set forth in the request.") (footnote and punctuation omitted).

Ray also contends that trial counsel should have objected to the following charge:

> If you find that the alleged victim is incapable of intelligently consenting, the lack of actual force necessary to overcome a resistant victim in other cases is supplied constructively by the rule that no more force need be used than necessary to effect the penetration made by the Defendant.

According to Ray, this instruction relieved the State of its burden to prove force, an essential element of rape. See OCGA § 16-6-1 (a) (1) ("A person commits the offense of rape when he has carnal knowledge of . . . [a] female forcibly and against her will."). In *Cook v. State*, 338 Ga. App. 489, 491 (1) (790 SE2d 283) (2016), however, we reaffirmed the principal that when a victim "is physically or

7

mentally unable to give consent to the act, as when she is intoxicated, drugged, or mentally incompetent, the requirement of force is found in the constructive force, that is, in the use of such force as is necessary to effect the penetration made by the defendant." The court's constructive force instruction was proper, undermining Ray's claim that counsel should have objected to it. See id. at 492-493 (2); see also *Currier v. State*, 294 Ga. 392, 397 (2) (754 SE2d 17) (2014) ("Since the jury instructions were not erroneous, counsel was not deficient for failing to make an objection that lacked merit.").

(c) The victim's aunt, who initially reported the victim's outcry, died before trial. Prior to her death, the aunt gave a recorded interview to police, which was played for the jury. Ray argues that trial counsel should have objected to the admission of this evidence, given the aunt's unavailability for cross-examination at trial. The record shows, however, that trial counsel explicitly consented to the interview's admission. As counsel explained at the new trial hearing, the defense team believed that the interview helped show that the family had fabricated the allegations against Ray. And in closing statements, counsel referenced the recording, noting that the aunt's casual demeanor during the interview was indicative of "somebody who is making a false accusation."

Trial counsel made a reasonable, tactical decision not to contest admission of the aunt's recorded interview. "Even though a different attorney might have chosen a different trial strategy, this does not equate to ineffective assistance of counsel." *Warbington v. State*, 281 Ga. 464, 466 (2) (c) (640 SE2d 11) (2007); see also *Ford v. State*, 290 Ga. 45, 48 (5) (a) (717 SE2d 464) (2011) (no deficient performance where trial counsel made reasonable, strategic decision not to object to potentially inadmissible character evidence).

(d) A medical examination of the victim after her outcry revealed that she had a partially-intact hymen. The State informed the trial court that it did not plan to discuss this fact at trial because the medical finding was not conclusive of trauma or sexual intercourse and thus was irrelevant. The trial court agreed that the finding was "an inconclusive thing" that was "not really evidence." Ray now claims that trial counsel should have questioned the examining doctor about the finding to support his defense that he never had sex with the victim. But Ray has pointed to no evidence that a partially-intact hymen proves anything with respect to whether the victim was raped. And the doctor who examined the victim conceded that he saw no signs of recent trauma or visible injury. Under these circumstances, Ray has not demonstrated that he was prejudiced by trial counsel's failure to question the doctor about the

9

victim's hymen. See *Speziali v. State*, 301 Ga. 290, 295 (2) (c) (800 SE2d 525) (2017) (even if trial counsel's cross-examination of witness was deficient, ineffective assistance claim failed absent a showing of prejudice).

(e) Ray argues that trial counsel should have objected to or asked for curative instructions regarding testimony given by the forensic interviewer that bolstered the victim's credibility. The record shows, however, that this testimony came out on cross-examination, while trial counsel was exploring inconsistencies in the victim's interview responses. Counsel noted at the new trial hearing that she tried to highlight the inconsistencies through her cross-examination, but was not sure how effectively she questioned the forensic interviewer because this type of individual views everything as "evidence of abuse." We cannot find counsel's effort to cross-examine this witness deficient. Although counsel testified at the new trial hearing that she should have objected, "[h]indsight has no place in an assessment of the performance of trial counsel, and a lawyer second-guessing [her] own performance with the benefit of hindsight has no significance for an ineffective assistance of counsel claim." *Gilmer v. State*, 339 Ga. App. 593, 595 (2) (a) (794 SE2d 653) (2016) (citation and punctuation omitted).

Moreover, in reviewing the objective reasonableness of trial performance, we are not limited to counsel's subjective explanation of her conduct. See *Gilmer*, 339 Ga. App. at 596 (2) (a). "If a reasonable lawyer might have done what the actual lawyer did – whether for the same reasons given by the actual lawyer or different reasons entirely – the actual lawyer cannot be said to have performed in an objectively unreasonable way." Id. In this case, a reasonable lawyer might have concluded that objecting to the bolstering testimony "could signal to the jury that the defense was worried about such testimony, thereby emphasizing the testimony and magnifying any harmful implications of it." *Jones v. State*, 292 Ga. 593, 602 (7) (d) (740 SE2d 147) (2013). Accordingly, Ray cannot demonstrate deficient performance on this ground.

(f) We are concerned, however, that Ray's final ineffective assistance claim, which raises a speedy trial allegation, requires further analysis below. The record shows that Ray was first indicted for sexual battery and two counts of aggravated battery during the January 2011 term of court. The indictment was amended with additional charges (including rape) on June 8, 2015, and trial commenced on March 28, 2016. Citing this five-year delay between the initial indictment and trial, Ray

11

argues that trial counsel should have filed a motion to dismiss on speedy trial grounds.

To prevail on this claim below, Ray needed to show that a motion to dismiss would have been granted had it been filed. See *Chalk v. State*, 318 Ga. App. 45, 48 (1) (c) (733 SE2d 351) (2012). And consideration of Ray's showing required the trial court to conduct the two-part speedy trial test established by the United States Supreme Court in *Barker v. Wingo*, 407 U. S. 514 (92 SCt 2182, 33 LE2d 101) (1972), and *Doggett v. United States*, 505 U. S. 647 (112 SCt 2686, 120 LE2d 520) (1992). See *Chalk*, supra. Under this test, the trial court first "must determine whether the interval from the defendant's arrest, indictment, or other formal accusation to trial is sufficiently long to be considered 'presumptively prejudicial.'" Id. (citation omitted). If delay is presumptively prejudicial, the court must then decide

> whether the defendant has been deprived of his right to a speedy trial by analyzing a four-part balancing test that considers (1) the length of the delay, (2) the reason for the delay, (3) the assertion of the defendant of his right to a speedy trial, and (4) prejudice to the defendant.

Id.

Although the trial court rejected Ray's speedy-trial based ineffective assistance claim, we cannot determine whether it conducted the appropriate analysis in doing

12

so. The order denying Ray's motion for new trial briefly references the reasons for delay and finds no "improper prejudice." But it does not mention the *Barker-Wingo* factors or discuss how those factors should be weighted in the balancing test. It also does not assess, to any extent, whether the delay prejudiced Ray, despite the fact that the victim's aunt (who reported the victim's outcry to police) died prior to trial.

Given the extensive delay here, evidence indicating that the State was responsible for at least some portion of the delay, and the death of a potentially important witness, we find that the trial court must conduct the appropriate test and enter findings of fact and conclusions of law before we can review Ray's claim of error. See *Higgenbottom v. State*, 288 Ga. 429, 431 (704 SE2d 786) (2011) (limited findings made by the trial court with respect to *Barker-Wingo* balancing test insufficient for proper appellate review); *Thomas v. State*, 331 Ga. App. 641, 662 (8) (b) (ii) (771 SE2d 255) (2015) (noting that the trial court "did not break down the overall pretrial delay into relevant time periods and assign responsibility for delay to each time period"); *Leopold v. State*, 324 Ga. App. 550, 557-558 (2) (751 SE2d 184) (2013) ("It is imperative . . . that in cases implicating a defendant's constitutional right to speedy trial, the trial court enter findings of fact and conclusions of law consistent with *Barker*."). Accordingly, we vacate the order denying Ray's motion for

13

new trial and remand for the trial court to (1) resolve this ineffective assistance claim using the *Barker-Wingo* analysis, and (2) enter an order detailing its findings and conclusions. See *Higgenbottom*, supra; *Thomas*, supra; *Leopold*, supra.

4. Finally, Ray argues that the trial court erred in excluding evidence that the victim's aunt had, on several previous occasions, falsely accused other individuals of sexual misconduct. Ray proffered evidence regarding these prior accusations at a pretrial hearing, but the trial court found the evidence irrelevant, noting that the aunt was deceased and would not be a witness at trial .

Evidence of a victim's prior false claims of sexual abuse are admissible in a sexual assault case "to attack the credibility of the prosecutrix and as substantive evidence tending to prove that the instant offense did not occur." *Smith v. State*, 259 Ga. 135, 137 (1) (377 SE2d 158) (1989). We recognize that Ray's allegations involve purportedly false accusations by the victim's aunt, rather than the victim. But Ray asserted that the family of the mentally-challenged victim had convinced her to fabricate the allegations against him, and the aunt made the initial report to police. Given these particular circumstances, evidence that the aunt had previously made false claims of sexual abuse would be relevant to the veracity of the allegations here. See id.; *Goldstein v. State*, 283 Ga. App. 1, 6 (3) (a) (640 SE2d 599) (2006) (trial

14

counsel ineffective for failing to investigate and present evidence that victim's mother had previously made false sexual abuse allegations); *In the Interest of M. G.*, 239 Ga. App. 787, 790 (521 SE2d 918) (1999) (trial court erred in refusing to allow defendant to cross-examine victim's grandfather about his prior false child molestation allegations, where grandfather was first to question the victim and report the outcry).

Before admitting such evidence, however, the trial court must make a threshold determination that "a reasonable probability of falsity exists." *Smith*, supra at 137 (1) (citation and punctuation omitted). Although the trial court held a pretrial hearing and received evidence regarding the prior allegations, it does not appear that the court assessed the truth or falsity of the claims. Instead, it erroneously found the evidence irrelevant based on the aunt's death and consequential absence from trial. Accordingly, on remand, the trial court must make the necessary threshold determination regarding falsity. If a reasonable likelihood of falsity exists, evidence of the allegations is admissible, and Ray is entitled to a new trial. See *Peters v. State*, 224 Ga. App. 837, 839-840 (4) (481 SE2d 898) (1997) (remanding for falsity determination); *Humphrey v. State*, 207 Ga. App. 472, 476 (2) (428 SE2d 362) (1993) ("Since appellant contended that no rape occurred, any evidence showing a 'reasonable probability' that the prosecutrix had made other false accusations would

certainly be the strongest defense available to him; thus it cannot be said that the failure to adhere to the *Smith* rule was harmless error.").

*Judgment vacated and case remanded with direction. Miller, P. J., and Self, J., concur.*