[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-14288
Non-Argument Calendar

_____

D.C. Docket No. 2:17-cv-00070-RWS


STANLEY JAMES OLIVER,

                                        Petitioner-Appellant,

versus

GLENN JOHNSON,
COMMISSIONER, GEORGIA DEPARTMENT OF CORRECTIONS,

                                        Respondents-Appellees.


_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(March 13, 2019)

Before WILSON, ROSENBAUM, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Stanley Oliver, a Georgia state prisoner serving a total life sentence, appeals the district court's denial of his 28 U.S.C. § 2254 habeas corpus petition. The district court granted a certificate of appealability ("COA") on whether Oliver's trial counsel was ineffective for opening the door on cross-examination of the victim to testimony of Oliver's prior acquittal on similar charges against another person. We expanded the COA to include the issue of whether his trial counsel was also ineffective for not requesting a limiting instruction once this testimony came in. After careful review, we affirm the denial of his § 2254 petition.

**I.**

After a jury trial, Oliver was convicted of kidnapping, rape, and aggravated assault of his former girlfriend, F.W., during March 2008. In the light most favorable to the verdict, the evidence showed the following. Oliver and F.W. had split up in February 2008 after Oliver became violent with her, but they reconnected on March 8 when Oliver came to F.W.'s mother's house, where F.W. was staying, and claimed that he wanted to "work things out." Oliver took F.W. to his house, where she remained until March 12.

Between March 8 and 12, Oliver beat F.W. with his fists, a leather strap, and a fireplace poker; he ripped out some of her hair; he stabbed her in the leg with a knife; and he threatened to kill her. On her last night in the home, F.W. and Oliver had sexual intercourse; she testified that she did not want to but "thought that was

2

the only way I was gonna get to leave." F.W. escaped on March 12 while Oliver was in the bathroom, after seeing her mother's car in the driveway. F.W. went to a hospital and received treatment. The sheriff's deputy who was dispatched to the hospital testified that F.W. was "contused from head to foot," with a large patch of hair having been pulled out of her scalp, a puncture wound in her thigh, and various lacerations and abrasions over her body. Pictures of her injuries were entered into evidence. The fire poker, leather strap, and knife were recovered at Oliver's house.

At trial, the state elicited testimony from F.W. about Oliver's earlier acquittal on charges of similar crimes against another person. The trial judge permitted the state to elicit this testimony because Oliver's trial counsel on cross-examination had questioned her failure to contact police about Oliver's alleged prior violent acts against her in February. The trial judge found that Oliver's counsel had opened the door to evidence to explain F.W.'s conduct in the period leading up to March 8.

After trial, a different trial judge heard Oliver's motion for new trial and granted a new trial on the ground that F.W.'s testimony about Oliver's earlier acquittal on similar charges was inadmissible and prejudicial. The new judge found that Oliver's counsel had not opened the door to testimony about the prior charges through his cross-examination of F.W.

3

The state appealed, and the Georgia Court of Appeals reversed. *See State v. Oliver*, 755 S.E.2d 2d 293, 296–97 (Ga. Ct. App. 2014). The appellate court found that the challenged testimony was admissible, even though it implicated Oliver's character, because it "was relevant to explain F.W.'s conduct in the period leading up to March 8, after Oliver's counsel on cross-examination questioned her failure to notify law enforcement about Oliver's prior violent acts against her." *Id.* at 297.

On remand, the trial court considered Oliver's remaining grounds for a new trial, including that trial counsel was ineffective in the following two ways: (1) opening the door to admission of evidence of the prior charges; and (2) failing to request a limiting instruction on that same evidence. After holding a hearing at which trial counsel testified, the trial court denied Oliver's motion for new trial.

The Georgia Court of Appeals affirmed. *See Oliver v. State*, 786 S.E.2d 701, 705–07 (Ga. Ct. App. 2016). The appellate court first found that "questioning F.W. about her prior failure to contact law enforcement was a reasonable strategy," as there were "few avenues of defense in this case other than challenging F.W.'s story by attacking her credibility." *Id.* at 706. Moreover, according to the court, while counsel's questioning ultimately misfired, "it was not a foregone conclusion that trial counsel's questioning was going to result in admission of Oliver's acquitted charges." *Id.* The court explained that, while it "ultimately ruled that this opened the door to admission of the prior acquittals, . . . the motion judge's

4

earlier ruling to the contrary indicated that reasonable minds can differ on this point." *Id.*

Second, the state appellate court found that Oliver was not prejudiced by trial counsel's failure to request a limiting instruction once evidence of the prior charges against him was admitted. *Id.* at 706–07. The court assumed without deciding that trial counsel performed deficiently by failing to request the instruction. *Id.* at 707. But the court found that the failure was not prejudicial because the evidence against Oliver was strong, the state did not bring out the specific facts of the underlying charges, and the evidence concerned an acquittal, not a conviction. *Id.*

After the Georgia Supreme Court denied Oliver's petition for certiorari, Oliver filed the instant § 2254 habeas corpus petition *pro se* in federal district court. The district court denied the petition upon a magistrate judge's recommendation and then granted a COA as to whether trial counsel rendered ineffective assistance by opening the door on cross-examination of F.W. to damaging evidence of Oliver's prior bad acts. Oliver appealed to this Court, and we appointed counsel[1] and expanded the COA to include the issue of whether counsel was ineffective for failing to request a limiting instruction regarding that same evidence.

---

[1] We are grateful to Howard W. Anderson, III, court-appointed counsel, for ably representing Oliver in this appeal.

5

## II.

We review *de novo* a district court's denial of a 28 U.S.C. § 2254 petition, "but we owe deference to the final judgment of the state court." *Reed v. Sec'y, Fla. Dep't of Corr.*, 593 F.3d 1217, 1239 (11th Cir. 2010) (quotation marks omitted). In particular, under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal courts cannot grant habeas relief on claims adjudicated on the merits in state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). This standard is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quotation marks omitted).

The "clearly established" law relevant to Oliver's claims of ineffective assistance comes from *Strickland v. Washington*, 466 U.S. 668 (1984). *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011). The state-court decision was not "contrary to" *Strickland* because the court identified and applied the governing legal principles from *Strickland*, and Oliver has not shown that the Supreme Court has reached a different result when faced with materially indistinguishable facts. *See Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010). So our inquiry is whether the state-court decision involved an "unreasonable application" of *Strickland*.

A state-court decision involves an "unreasonable application" of Supreme Court precedent if the state court correctly identifies the governing legal principle, but unreasonably applies that principle to the facts of the petitioner's case. *Evan v. Sec'y, Dep't of Corr.*, 703 F.3d 1316, 1325 (11th Cir. 2013) (*en banc*). "The "unreasonable application" clause requires that the state-court decision be more than simply incorrect or erroneous—it must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). The standard is, and was meant to be, difficult to meet. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* A state prisoner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

## III.

To make out a successful claim of ineffective assistance of counsel under *Strickland*, a defendant must show both that (1) his counsel's performance was deficient and (2) the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687. Failure to establish either prong is fatal and makes it unnecessary to consider the other. *Id.* at 697.

Counsel's performance is measured under an objective standard of reasonableness, and there is a strong presumption that counsel's conduct falls within the range of reasonable performance. *Id.* at 687, 690. When evaluating counsel's performance, "every effort must be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Deficient performance "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* To make such a showing, a defendant must demonstrate that "no competent counsel would have taken the action that his counsel did take." *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (*en banc*).

Prejudice in this context means a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The petitioner must show that the likelihood of a different result is substantial, not just conceivable. *Richter*, 562 U.S. at 112.

"Surmounting *Strickland*'s high bar is never an easy task," and AEDPA raises the bar even higher. *Id.* at 105. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id.* (citations omitted). "When § 2254(b) applies, the question is not

whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*

### A.

We first consider Oliver's argument that trial counsel was ineffective for "unintentionally opening the door" to evidence of prior bad acts.  After the trial court found that counsel had opened the door, F.W. testified that Oliver had been acquitted on similar charges, that she had overheard some conversation indicating that Oliver was, in fact, guilty of those charges, and that the acquittal had influenced her decision not to contact police.  The state appellate court found that counsel's questioning of F.W. about her prior failure to contact law enforcement was a "reasonable strategy" because there were "few avenues of defense in this case other than challenging F.W.'s story by attacking her credibility."  *Oliver*, 786 S.E.2d at 705–06.

In Oliver's view, counsel could and should have handled the matter differently.  He says that counsel, before deciding how to proceed with cross-examination, should have approached the bench and asked whether questioning F.W. about why she failed to report the prior violent incident to police would open the door to questioning about the prior charges.  But it's always true that trial counsel "could have done something more or something different."  *Chandler*, 218 F.3d at 1313.  And we must evaluate the reasonableness of "the action his counsel

did take" "from counsel's perspective at the time," without "the distorting effects of hindsight." *Id.* (quotation marks omitted).

Here, the district court was correct to conclude that the state appellate court's application of *Strickland* was reasonable. Because the case against Oliver hinged largely on F.W.'s credibility, it was reasonable for counsel to question F.W. about her prior failure to report Oliver's previous uncharged offenses against her. This strategy carried risks, but "[i]t was not a foregone conclusion that trial counsel's questioning was going to result in admission of Oliver's acquitted charges." *Oliver*, 786 S.E.2d at 706. As the state court noted, counsel did not directly question F.W. about the source of her fear of Oliver, and a trial judge found that counsel's cross-examination did not open the door to admission of the prior charges. While counsel's cross-examination ultimately misfired, "a defendant is not guaranteed errorless counsel." *Stanley v. Zant*, 697 F.2d 955, 962 (11th Cir. 1983). Viewing "the action [Oliver's] counsel did take" "from counsel's perspective at the time," *Chandler*, 218 F.3d at 1313, we conclude that the state court presented a "reasonable argument that counsel satisfied *Strickland*'s deferential standard," *Richter*, 562 U.S. at 105. So we defer to the state court's resolution of this claim.

**B.**

10

Oliver's second argument is that he was prejudiced by trial counsel's failure to request a limiting instruction once evidence of the prior charges against him was admitted. The state appellate court found that, even assuming counsel was deficient, the error was not prejudicial because there was not a reasonable probability of a different outcome had counsel requested the instruction.

The district court did not err in determining that the state appellate court's application of *Strickland* was reasonable. The state appellate court reasonably concluded that there was no reasonable probability of a different result because the "evidence against Oliver was strong." *Oliver*, 786 S.E.2d at 707. As the court put it, this was not a "'he said, she said' credibility contest" type of case. *Id.* at 705. Rather, this was "a 'he said, she said, with a lot of physical evidence corroborating what she said' case." *Id.* As we have indicated, "F.W. presented at the hospital with bruising all over her body, a large clump of hair missing, and a wound in her leg, supporting her claim that Oliver had assaulted her, including stabbing her when she tried to leave his home." *Id.* Police also "found at Oliver's home clumps of F.W.'s hair, and the items she claimed Oliver had assaulted her with." *Id.* Plus, as the court noted, the state did not bring out the specific facts of the prior charges, and Oliver was acquitted of the charges, not convicted.

In light of the physical evidence corroborating many aspects of F.W.'s testimony and the other factors cited by the state appellate court, Oliver has not

11

shown that the state court's ruling on this claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.  When we givie the state-court decision the benefit of the doubt, as we must, *Renico*, 559 U.S. at 773, the state court's conclusion that a limiting instruction would not have had a substantial effect on the jury's deliberations was reasonable.

For these reasons, we affirm the denial of Oliver's § 2254 petition.

**AFFIRMED.**