**FIFTH DIVISION**
**PHIPPS, P. J.,**
**DILLARD and PETERSON, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**August 8, 2016**

# In the Court of Appeals of Georgia

A16A1105. COOK v. THE STATE.

PHIPPS, Presiding Judge.

A jury found Timothy Cook guilty of rape.[1] The trial court denied Cook's motion for new trial, and he appeals. Cook argues that (i) the evidence was insufficient to support his rape conviction, (ii) the trial court erred in instructing the jury, and (iii) he was denied effective assistance of trial counsel. Cook also claims that he was improperly sentenced as a recidivist. For the reasons that follow, we hold that the evidence was sufficient, the trial court did not err in instructing the jury, and Cook was not denied effective assistance. However, the court erred in sentencing Cook as a recidivist. Thus, we affirm the conviction, vacate Cook's sentence, and remand for resentencing.

---

[1] OCGA § 16-6-1.

1. Cook argues that he was entitled to a new trial because the evidence was insufficient to support his conviction for rape.

> When reviewing a defendant's challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence. We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.[2]

The evidence, viewed in the light most favorable to the verdict, showed the following. On May 6, 2012, C. M. attended a family party with her sister and Cook, the boyfriend of C. M.'s sister. After the party, Cook and C. M.'s sister went to C. M.'s home in Grovetown. The three began drinking, and Cook poured C. M. some shots of alcohol. Suddenly, C. M. became nauseated and short of breath.

C. M. went to the bathroom and vomited uncontrollably before passing out on the floor. When she woke up, she was unable to move until her husband came into the bathroom and helped her get up and into their bed. Later, C. M. awoke briefly when she heard Cook enter her bedroom, then she lost consciousness again. Cook pulled

---

[2] *Pye v. State*, 322 Ga. App. 125, 126 (1) (742 SE2d 770) (2013) (footnote omitted). See also *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LEd2d 560) (1979).

2

the covers off C. M.'s bed and took her pants off. C. M. was in and out of consciousness and dizzy, and she could not talk. Cook had sexual intercourse with C. M., then he pulled the covers back over her and left the room.

After Cook left the room, C. M. was very dizzy and could not keep her balance, but she was able to get up and get dressed. She was hysterical, screaming and crying, and she told her husband to get Cook out of their house because he had raped her. C. M.'s husband ordered Cook out of the house, and Cook and C. M.'s sister left.

The police were called, and C. M. was taken to the emergency room, where a doctor performed a sexual assault examination, including taking cervical swabs. Cook's DNA was found in cervical swabs taken from C. M.'s vagina.

The following day, C. M. noticed white residue on the shot glass from which she had been drinking. After Cook was arrested, C. M.'s sister called the police to report that she had found a pill, Clonazepam, on the floor of Cook's apartment along with a pill crusher. She also told police that the effects of Clonazepam, when mixed with alcohol, were similar to the symptoms C. M. had experienced. Police then obtained a search warrant for Cook's residence and found several bottles of drugs prescribed to Cook, including Clonazepam.

At least 13 hours after the police first responded, C. M. gave a blood sample. The subsequent test of C. M.'s blood did not reveal the presence of any benzodiazepine drugs, which would include Clonazepam, but did find an anti-depressant, Paxil, which can cause dizziness and drowsiness. No other drugs were found in C. M.'s blood.

The State also presented evidence from two other women. J. D. testified that in August 2010, Cook, who was her husband's friend, grabbed her breasts and tried to kiss her. I. M. testified that in November 2010, she and her boyfriend joined Cook at a bar for drinks. After sharing drinks with her boyfriend and Cook, I. M. felt sick and vomited in the bathroom of the bar. Cook was waiting for her outside the bathroom, and the next thing she remembered was waking up in Cook's truck. When she awoke, Cook was digitally penetrating her vagina. At trial, Cook testified that he and C. M. had consensual sex.

On appeal, Cook argues that the evidence was insufficient to support his conviction because C. M. consented and, if she had been drugged, there would have been evidence of such. However, C. M. testified that she was in and out of consciousness and could not talk. "It was for the jury to determine the credibility of

4

the witnesses and to resolve any conflicts or inconsistencies in the evidence."[3]

Despite the lack of physical evidence that C. M. had been drugged and Cook's claim that the sexual intercourse was consensual, the evidence was sufficient for the jury to find lack of consent based on C. M.'s testimony that Cook had sexual intercourse with her while she was incapacitated.[4]

Cook also asserts that there was insufficient evidence of force.

When the victim is physically or mentally unable to give consent to the act, as when she is intoxicated, drugged, or mentally incompetent, the requirement of force is found in the constructive force, that is, in the use of such force as is necessary to effect the penetration made by the defendant.[5]

---

[3] *Pye*, supra at 127 (1) (footnote omitted).

[4] See id. (victim's testimony that the defendant forced her to submit to sexual intercourse against her will was sufficient to establish lack of consent, despite the lack of physical trauma and the defendant's claim that sex was consensual).

[5] *Demetrios v. State*, 246 Ga. App. 506, 507 (1) (a) (541 SE2d 83) (2000) (footnote omitted). See also *Baise v. State*, 232 Ga. App. 556, 558 (1) (502 SE2d 492) (1998) (where a victim is incapable of consent due to an intellectual disability, "the lack of actual force necessary to overcome a resistant victim in other cases is supplied constructively by the rule that no more force need be used than that necessary to effect the penetration").

Under these circumstances, C. M.'s testimony that she was in and out of consciousness when Cook had sexual intercourse with her was sufficient to establish constructive force.[6]

2. Cook contends that the trial court's instructions to the jury were erroneous because the charge did not require the jury to find that he had the criminal intent to commit the offense against C. M.'s will and did not require the jury to find lack of consent beyond a reasonable doubt. Cook has failed to show error.

Although he objected at the charge conference, Cook made no objections to the charge as given. Because an objection at the charge conference does not preserve an objection to the charge as subsequently given, the failure to object to the charge as given precludes appellate review unless "the jury charge constitutes plain error which affects substantial rights of the parties."[7] In order to constitute plain error, four prongs must be satisfied.

First, there must be an error or defect—some sort of deviation from a legal rule—that has not been intentionally relinquished or abandoned,

---

[6] See *Demetrios*, supra (victim's testimony that she could not move due to drugs and hypnosis when defendant had sexual intercourse with her was sufficient to establish constructive force).

[7] *White v. State*, 291 Ga. 7, 8 (2) (727 SE2d 109) (2012) (punctuation omitted) (quoting OCGA § 17-8-58 (b)).

i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error—discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.[8]

Cook contends that the constructive force instruction allowed the jury to convict him without finding that he intended to commit rape. The court instructed the jury:

> [W]hen the State has proven beyond a reasonable doubt that the victim is physically or mentally unable to give consent to the act as when she is intoxicated, drugged, or mentally incompetent the requirement of force is found in constructive force. That is, in the use of such force as is necessary to effect the penetration made by the defendant.

---

[8] *Pye*, supra at 128 (2) (footnote omitted).

The trial court's charge on constructive force sets forth a correct statement of law.[9] Therefore, Cook cannot establish that a plain or obvious legal error occurred, as required by the first two prongs of the plain-error test.[10]

Cook also takes exception to the following instruction:

> [A]gainst her will is synonymous with without her consent. Sexual intercourse with a woman whose will is temporarily lost from intoxication or unconsciousness arising from the use of drugs or other cause or sleep is rape.

This instruction, however, also sets forth a correct statement of law.[11] The trial court also instructed the jury that the State had to prove each element of rape, including lack of consent, beyond a reasonable doubt. Accordingly, the jury charge did not constitute error, much less any plain error pursuant to OCGA § 17-8-58 (b).

3. Cook also asserts that he received ineffective assistance of counsel. To prevail on this claim, Cook must show that trial counsel's performance was deficient

---

[9] *Demetrios*, supra; *Baise*, supra. See also *Melton v. State*, 282 Ga. App. 685, 691 (2) (c) (639 SE2d 411) (2006) ("Evidence of a victim's inability to give consent can be used to impute the element of force in certain sexual abuse cases involving a victim who is intoxicated, drugged, or mentally incompetent.").

[10] See *Pye*, supra.

[11] See *Johnson v. State*, 186 Ga. App. 891, 892 (3) (369 SE2d 48) (1988) (sexual intercourse with a woman who cannot consent is rape). See also *Paul v. State*, 144 Ga. App. 106 (2) (240 SE2d 600) (1977) (same).

8

and that, but for the deficiency, "there is a reasonable probability that the outcome of the trial would have been more favorable to him."[12] Cook must overcome the strong presumption that counsel's performance fell within the wide range of reasonable professional conduct.[13] He has failed to do so here.

(a) Cook argues that his trial counsel rendered ineffective assistance when he failed to request a contemporaneous limiting instruction prior to I. M.'s testimony. At trial, prior to J. D.'s testimony, the court instructed the jury that other acts evidence could only be considered for the limited purpose of showing knowledge and intent, identity of the perpetrator, or motive and opportunity, and that the evidence could not be considered for any other purpose. After J. D. testified, another witness testified. Then, the State called "another similar transaction witness," I. M., and the trial court instructed the jury that the same limiting instruction given previously applied. At the close of trial, the court also re-instructed the jury that evidence admitted for the limited purpose of showing, if it does, course of conduct, motive, scheme or lustful disposition could not be considered for any other purpose.

---

[12] *Benson v. State*, 294 Ga. 618, 622 (3) (754 SE2d 23) (2014) (citation omitted).

[13] See *Leon v. State*, 237 Ga. App. 99, 105 (4) (513 SE2d 227) (1999).

As an initial matter, pursuant to OCGA § 24-4-413 (a), "In a criminal proceeding in which the accused is accused of an offense of sexual assault, evidence of the accused's commission of another offense of sexual assault shall be admissible and may be considered for its bearing on any matter to which it is relevant." Accordingly, I. M.'s testimony that Cook sexually assaulted her was admissible, not just as similar transaction evidence, but also for its bearing on any matter to which it was relevant.[14]

Because the evidence was admissible for its bearing on any matter to which it was relevant, an objection requesting a limiting instruction would have been meritless. Counsel's failure to make a meritless objection cannot constitute deficient performance.[15] Moreover, Cook cannot show that there is a reasonable probability that, but for this alleged failure on the part of counsel, the trial result would have been different where the jury *was* instructed to consider the evidence for a limited purpose.[16]

---

[14] See *Marlow v. State*, __ Ga. App. __ (1) (b) (Case No. A16A0573, decided April 22, 2016).

[15] *Wesley v. State*, 286 Ga. 355, 356 (3) (a) (689 SE2d 280) (2010).

[16] See *Sims v. State*, 317 Ga. App. 420, 422 (1) (731 SE2d 105) (2012) (even if failure to request a contemporaneous limiting instruction was deficient performance, defendant could not show prejudice because trial court gave a limiting

(b) Cook contends that his trial counsel was also ineffective in failing to object to the introduction of the forensic toxicologist's testimony as to the half-life of certain drugs and in failing to obtain and present the testimony of a defense expert at trial. Specifically, Cook argues that his trial counsel rendered deficient performance when he failed to object to the testimony of the forensic toxicologist because the testimony was irrelevant and prejudicial, the State failed to provide any relevant discovery, and the toxicologist was not an expert in pharmacology.

The State called a forensic toxicologist from the GBI crime lab; Cook stipulated that she was an expert. The toxicologist testified that GHB (gamma-hydroxybutyric acid) and Rohypnol can cause dizziness, drowsiness, nausea and confusion and that Clonazepam can also cause these symptoms when mixed with alcohol. The toxicologist also testified that a small dose of Clonazepam could be out of a person's system within nine hours, and that neither GHB nor Rohypnol would still be in a person's bloodstream thirteen hours after dosage. On cross-examination, trial counsel elicited from the toxicologist that every tested sample from the victim was negative for these drugs and that testing the samples was "about all" the toxicologist could do.

---

instruction at the close of evidence).

11

At the hearing on Cook's motion for new trial, an expert in pharmacology and toxicology testified that Clonazepam remains in the bloodstream for two to five days and would be revealed, if present, in a test of blood drawn thirteen hours after dosage, as would Rohypnol, although GHB would not be. At the hearing, trial counsel also testified that his strategy had been to attack C. M.'s credibility and show that she had consented to the sexual encounter. Trial counsel had not believed that he needed an expert witness in order to attack C. M.'s credibility.

"Not objecting to testimony but instead subjecting it to cross-examination may be part of a reasonable trial strategy," and here, on cross-examination, trial counsel reinforced that C. M.'s blood samples were negative for any drugs (other than Paxil) and cast doubt as to the toxicologist's ability to reach any further conclusions.[17] Furthermore, Cook has failed to show prejudice. C. M. testified that she became ill and passed out and that Cook raped her while she was incapacitated, and her claims were supported by an immediate outcry, as well as physical evidence. I. M. also testified that Cook sexually assaulted her while she was unconscious. In light of this strong evidence of guilt, there is no reasonable probability that the outcome of the

---

[17] *Al-Attawy v. State*, 289 Ga. App. 570, 573 (1) (657 SE2d 552) (2008) (footnote omitted).

12

trial would have been more favorable to Cook if trial counsel had objected to or further countered the toxicologist's testimony.[18]

(c) Cook contends that trial counsel was ineffective in failing to request the removal of a juror after the juror revealed that he knew one of the witnesses. During deliberations, a juror sent the court a note stating that he knew C. M.'s husband from his business as a mechanic and had "seen him to be a respectable person and citizen." In response, the trial court asked the juror if he could be fair and impartial, and the juror indicated that he could do so. Trial counsel did not ask that the juror be excused. At the hearing on the motion for new trial, trial counsel testified that he had conferred with Cook and they decided to leave the juror on the panel because, choosing between this juror and the first alternate juror, this juror was a man and they preferred a male-dominated jury.

Decisions regarding which jurors to accept "are the exclusive province of the lawyer after consultation with the client."[19] Trial counsel testified that his failure to

---

[18] See *Kirkland v. State*, 334 Ga. App. 26, 36 (5) (c) (778 SE2d 42) (2015) (defendant could not show prejudice from counsel's failure to call an expert witness to testify to flaws in a forensic interview where there was an outcry before the interview occurred and similar transaction evidence, as well as incriminating statements by the defendant).

[19] *Martin v. State*, 267 Ga. App. 28, 30 (1) (598 SE2d 828) (2004).

13

request the removal of this juror was strategic, and Cook has not overcome the strong presumption that trial counsel's actions constituted reasonable professional assistance.[20]

4. Finally, Cook argues, and the State concedes, that the trial court erred by sentencing Cook as a recidivist under OCGA § 17-10-7 (a) (2012) because he had not been convicted of a felony prior to the commission of the instant offense. We agree, and therefore vacate Cook's sentence and remand for resentencing.

"The interpretation of a statute is a question of law, which this court reviews de novo."[21]

On April 9, 2012, approximately one month prior to C. M.'s rape, Cook entered an *Alford* plea to one count of false imprisonment of I. M. Cook was sentenced as a first offender. The rape of C. M. occurred on May 6, 2012. Several days later, on May 10, 2012, Cook's first offender status was revoked based on a misdemeanor traffic

---

[20] See *Higginbotham v. State*, 287 Ga. 187, 191 (5) (a) (695 SE2d 210) (2010) (trial counsel did not render ineffective assistance when he failed to request removal of juror who was "pretty sure" he knew the father of murder victim where juror did not meet the qualification for dismissal for cause); *Stephens v. State*, 224 Ga. App. 184, 186 (3) (480 SE2d 235) (1997) (counsel did not render ineffective assistance where, as a matter of strategy, counsel declined to strike juror who knew defendant).

[21] *Hobbs v. State*, 334 Ga. App. 241, 245 (3) (779 SE2d 15) (2015) (footnote omitted).

offense, and Cook was sentenced to ten years' imprisonment for the false imprisonment of I. M. On June 5, 2013, the trial court sentenced Cook as a recidivist to life in prison for the rape of C. M., consecutive to the ten-year term for false imprisonment.

"A crime must be construed and punished according to the provisions of the law existing at the time of its commission."[22] On May 6, 2012, at the time of the commission of the offense against C. M., OCGA § 17-10-7 (a) (2012) provided that "any person convicted of a felony offense in this state . . . who shall afterwards commit a felony" shall be sentenced to the maximum possible punishment for the subsequent offense.[23]

"A first offender's guilty plea does not constitute a 'conviction' as that term is defined in the Criminal Code of Georgia."[24] Rather, under the first offender statute,

---

[22] *Riley v. State*, 243 Ga. App. 697, 698 (534 SE2d 437) (2000) (citation omitted).

[23] Effective July 1, 2012, OCGA § 17-10-7 (a) was amended to provide "any person who, after having been convicted of a felony offense in this state . . . commits a felony" shall be sentenced to the maximum possible sentence. Ga. L. 2012, pp. 926, 949, §§ 4-4, 9-1 (a).

[24] *Davis v. State*, 273 Ga. 14, 15 (537 SE2d 663) (2000) (citations and punctuation omitted).

"until an adjudication of guilt is entered, there is no conviction."[25] "[T]he case has, in effect, been suspended during the period of probation" until "eventually the probation is either revoked or it is discharged; unless it is revoked, there is no conviction."[26]

Cook's first offender status was revoked and an adjudication of guilt was entered — and he was thus convicted of a felony — on May 10, 2012, *after* the rape of C. M.[27] Because Cook's first offender status had not yet been revoked, Cook was not a convicted felon at the time he raped C. M. and he could not be sentenced as a recidivist for that crime.[28]

Although Cook was a convicted felon at the time he was convicted of the rape of C. M., the recidivist sentencing statute is clear that the commission of the

---

[25] Id.

[26] Id. (citations and punctuation omitted). See also OCGA § 42-8-60 (a), (b).

[27] See *Davis*, supra (where offender's 1991 first offender probation had not been revoked, it had not become a conviction). See also *Robbins v. State*, 326 Ga. App. 812, 813 (757 SE2d 452) (2014) ("[U]nder the first offender statute, until an adjudication of guilt is entered, there is no conviction.") (citation omitted).

[28] See *Davis*, supra (where offender's 1991 first offender probation had not been revoked prior to his 1997 felony conviction, he could not be sentenced as a recidivist under OCGA § 17-10-7 (b) (2)).

subsequent felony must occur after the prior conviction.[29] Moreover, even if there was some ambiguity in either the first offender statute or the recidivist sentencing statute, it must be construed in favor of Cook.

> [P]enal statutes are always construed strictly against the State and liberally in favor of human liberty. Thus, even if the statute increasing a penalty were capable of two constructions, it should be construed so as to operate in favor of life and liberty.[30]

We therefore vacate Cook's sentence as to his rape conviction and remand this case to the trial court for resentencing.

*Judgment of conviction affirmed; sentence vacated and case remanded for resentencing. Dillard and Peterson, JJ., concur.*

---

[29] OCGA § 17-10-7 (a) (2012).

[30] *Hobbs*, supra at 246 (3) (a) (punctuation and footnotes omitted).