**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**January 17, 2023**

# In the Court of Appeals of Georgia

A22A1452. MULKEY v. THE STATE.

DILLARD, Presiding Judge.

Following trial, a jury convicted John Mulkey on one count of child molestation. Mulkey now appeals his conviction and the denial of his motion for new trial, arguing the trial court erred in (1) admitting evidence of prior bad acts; (2) refusing to provide the jury with a limiting instruction regarding the evidence of prior bad acts; (3) failing to admonish the prosecution for allegedly improper remarks made during closing argument; and (4) denying his claim that trial counsel rendered ineffective assistance by failing to object to testimony bolstering the victim and the

prior-bad-acts witness's credibility, as well as to the prosecution's improper remarks during closing argument. For the reasons noted *infra*, we affirm.[1]

Viewed in the light most favorable to the jury's verdict,[2] the record shows that at some point in the early 1990s, Mulkey was working in Idaho, where he met Candace Hawkins. The two dated for almost a year before breaking up, after which Mulkey moved to Cartersville, Georgia, and married another woman, with whom he had a daughter. In the meantime, Candace remained in Idaho, married Robert Hawkins, and they adopted a daughter, D. H.

In 2004, Mulkey's wife became ill, and around this same time, Mulkey began sexually abusing his seven-year-old daughter, S. M. This abuse was eventually disclosed by S. M. to her mother, who told Mulkey to stop the abuse but did not contact law enforcement about it. Subsequently, in 2008, Mulkey's wife passed away from her illness, and afterward, his then 10-year-old daughter, S. M., left Georgia and went to live with a maternal aunt in Washington. The following summer, S. M. traveled to Georgia to visit Mulkey, but she told her mother's family about the sexual

---

[1] Oral argument was held in this appeal on September 7, 2022, and is archived on the Court's website. *See* Court of Appeals of Georgia, Oral Argument, Case No. A22A1452. (Sep. 7, 2022), available https://vimeo.com/749511912

[2] *See, e.g.*, *Libri v. State*, 346 Ga. App. 420, 421 (816 SE2d 417) (2018).

abuse, and they reported this disclosure to the Georgia Division of Family and Child Services ("DFCS"). DFCS then removed S. M. from Mulkey's custody, and she ended up staying with the family of a childhood friend, whose mother—Tammy Shaw—later became her legal guardian. Bartow County authorities ultimately charged Mulkey with several sexual offenses, but those charges were dismissed after proceedings stalled for nearly two years.

A few years later, Candace and Robert Hawkins divorced, and in 2011, she and Mulkey reconnected and began dating again. One year later, Mulkey and Candace married in Idaho. The day after their wedding, Candace had to work, so D. H.—who was now seven years old—went to the hotel where Mulkey was staying to swim in the pool. Then, following her swim, D. H. went into Mulkey's hotel room to change clothes. And as she was changing out of her bathing suit, Mulkey entered the room, laid her down on the bed while she was still undressed, and began placing rose petals on her chest and vaginal area. A moment later, a hotel cleaning staff member knocked on the door; at which point, D. H. stood up and got dressed. And although D. H. felt "a little weird" about the incident, she initially did not tell anyone.

Not long thereafter, Candace and D. H. moved to Cartersville to live with Mulkey, and a year later, the family moved to a home in Douglasville, Georgia.

Typically, Candace worked during the day and Mulkey worked at night, and, as a result, Mulkey was around in the afternoon when D. H. returned home from school. During this time period, Mulkey began to sexually molest D. H. Specifically, on numerous occasions, Mulkey sat D. H. on his lap and would rub her vaginal area with his hand. On another occasion, Mulkey did the same thing while he and D. H. were sitting in a truck. And although D. H. was scared, Mulkey told her not to tell anyone about their "little secret."

By 2015, Candace and Mulkey's relationship became strained, and in October 2015, Candace and D. H. moved to a separate home in Cobb County. Even so, while they were in the process of ending their marriage, Candace and Mulkey continued to maintain contact; but D. H. declined any suggestion by Candace that she spend time with Mulkey. A little over two years later, on December 24, 2017, Candace and D. H. had an argument over some inappropriate texts Candace discovered on D. H.'s mobile phone, and as a result, Candace punished D. H. by taking her phone away and sending her to her bedroom. Later that same day, D. H.—now even more upset—gave Candace a note saying that Mulkey inappropriately touched her when they lived in the same home. And after pressing her for details, D. H. disclosed to Candace that Mulkey sexually molested her on numerous occasions. Two days later, after the

4

holiday, Candace contacted law enforcement, and an investigator with the Douglas County Sheriff's Office conducted a forensic interview with D. H., during which she recounted the details of Mulkey's sexual abuse.

Thereafter, the State charged Mulkey, via indictment, with one count of aggravated sexual battery and one count of child molestation based on the numerous incidents of his sexual abuse of D. H. Then, several months before trial, the State filed a notice of its intention to admit Mulkey's sexual abuse of S. M. as prior-bad-acts evidence. And prior to jury selection, the trial court held a hearing on the matter, in which defense counsel argued the Bartow County charges had been dismissed based on a violation of Mulkey's Sixth Amendment right to a speedy trial in that matter,[3] and therefore, such evidence should be inadmissible. The State argued to the contrary, and following that argument, the trial court disagreed with Mulkey and ruled from the bench that the evidence of his alleged sexual abuse of S. M. was admissible.

The case then proceeded to trial, during which the foregoing evidence was presented. In addition, the Douglas County Sheriff's Office investigator testified

---

[3] *See* U.S. CONST. Amend. VI (providing that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial"); GA. CONST. Art. I, Sec. I, Par. XI (a) ("In criminal cases, the defendant shall have a public and speedy trial by an impartial jury; and the jury shall be the judges of the law and the facts.").

regarding her involvement in the case and forensic interview of D. H., and a Bartow County law enforcement officer similarly testified as to his investigation into S. M.'s allegations of sexual abuse and the forensic interview of S. M., detailing those allegations. S. M. also testified and recounted the details of Mulkey's alleged sexual abuse and her outcry.

After the State rested, Mulkey testified in his own defense and denied that he ever inappropriately touched either his daughter, S. M., or his step-daughter, D. H. Several character witnesses also testified on Mulkey's behalf, including S. M.'s guardian, Shaw. And an expert witness—with extensive experience conducting forensic interviews with child sexual abuse victims—testified that the forensic interviews of both S. M. and D. H. were seriously flawed, which rendered them unreliable. Nonetheless, at the conclusion of the trial, although the jury could not reach a verdict on the aggravated-sexual-battery charge,[4] it found Mulkey guilty on the child-molestation charge.

Subsequently, Mulkey obtained new counsel and filed a motion for new trial, in which he argued, *inter alia*, that his trial counsel rendered ineffective assistance.

---

[4] The trial court later entered an order of *nolle prosequi* as to the aggravated-sexual-battery charge.

But following a hearing, in which Mulkey's trial counsel testified regarding his representation, the trial court denied Mulkey's motion. This appeal follows.

1. Mulkey first contends the trial court erred in admitting evidence of his alleged prior sexual abuse of his daughter, S. M., under OCGA §§ 24-4-413 and 24-4-414. Specifically, he argues that because the charges related to this evidence were dismissed based on a violation of his right to a speedy trial, the admission was unfairly prejudicial. We disagree.

Turning to the statutes at issue, OCGA § 24-4-413 (a) provides: "In a criminal proceeding in which the accused is accused of an offense of sexual assault, evidence of the accused's commission of another offense of sexual assault shall be admissible and may be considered for its bearing on any matter to which it is relevant." Similarly, OCGA § 24-4-414 (a) provides: "In a criminal proceeding in which the accused is accused of an offense of child molestation, evidence of the accused's commission of another offense of child molestation shall be admissible and may be considered for its bearing on any matter to which it is relevant." And this Court has held that OCGA §§ 24-4-413 ("Rule 413") and 24-4-414 ("Rule 414") are the "more specific statutes that supersede the provisions of Rule 404 (b) in sexual assault and

7

child molestation cases."[5] Importantly, Rules 413 and 414 "create a rule of inclusion, with a strong presumption in favor of admissibility, and the State can seek to admit evidence under these provisions for any relevant purpose, including propensity."[6] Furthermore, a trial court's decision to "admit other acts evidence will be overturned only [when] there is a clear abuse of discretion."[7]

Here, Mulkey emphasizes that the charges arising from the evidence he sexually abused S. M. were dismissed based on a violation of his right to a speedy trial, and notes the delay in that prosecution resulted in the unavailability of critical

---

[5] *Robinson v. State*, 342 Ga. App. 624, 633-34 (4) (a) (805 SE2d 103) (2017); *accord King v. State*, 346 Ga. App. 362, 364 (1) (816 SE2d 390) (2018); *see Dixon v. State*, 341 Ga. App. 255, 258 (1) (800 SE2d 11) (2017) (noting that Rule 413 and Rule 414 "supersede the provisions of OCGA § 24-4-404 (b) in sexual assault and child molestation cases).

[6] *Robinson*, 342 Ga. App. at 634 (4) (a) (punctuation omitted); *see Dixon*, 341 Ga. App. at 258 (1) (acknowledging that Rules 413 and 414 "create a 'rule of inclusion, with a strong presumption in favor of admissibility as each provides that such evidence 'shall be admissible'" (punctuation omitted)); *see also* Ronald L. Carlson & Michael Scott Carlson, Carlson on Evidence 214 (5th ed. 2016) (noting that Federal Rules of Evidence 413 and 414, which OCGA §§ 24-4-413 and 24-4-414 closely track, "create presumptions in favor of admission of the defendant's other sexual offenses in sex crimes prosecutions").

[7] *Robinson*, 342 Ga. App. at 634 (4) (a) (punctuation omitted); *accord Steele v. State*, 337 Ga. App. 562, 565-66 (3) (788 SE2d 145) (2016).

defense witnesses.[8] From this, Mulkey reasons the admission of that evidence in this case was unfairly prejudicial under OCGA § 24-4-403, as he was forced to defend against the prior allegations without those critical witnesses. We find this argument unpersuasive.

Mulkey is correct that, under OCGA § 24-4-403, "[r]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." He is also right in noting that "evidence admissible under [OCGA §§ 24-4-413 and 24-4-414] may be excluded under Rule 403 if the trial court concludes that its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."[9] Even so,

---

[8] *See Weems v. State*, 310 Ga. App. 590, 591 (714 SE2d 119) (2011) (explaining that under *Barker v. Wingo*, 407 U.S. 514 (92 SCt 2182, 33 LE2d 101) (1972), in determining if a defendant's constitutional right to a speedy trial has been violated, upon a finding that a pretrial delay is presumptively prejudicial, a trial court must then determine "(i) whether [the] delay before trial was uncommonly long, (ii) whether the government or the criminal defendant is more to blame for that delay, (iii) whether, in due course, the defendant asserted the right to a speedy trial, and (iv) whether he or she suffered prejudice as the delay's result" (punctuation omitted)).

[9] *Jackson v. State*, 342 Ga. App. 689, 692 (805 SE2d 457) (2017) (punctuation omitted); *see State v. McPherson*, 341 Ga. App. 871, 874 (800 SE2d 389) (2017)

the major function of OCGA § 24-4-403 is to exclude matters of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect due to the danger that the jury may convict the defendant not for the offense charged but for the extrinsic offense, because the jury may feel that the defendant should be punished for that activity even if he is not guilty of the offense charged.[10]

But importantly, this determination lies soundly "within the discretion of the trial court and calls for a common sense assessment of all the circumstances surrounding the extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness."[11] And suffice it to say, exclusion of evidence under Rule 403 is "an extraordinary remedy which

---

(holding evidence that is admissible under Rules 413 and 414 may be excluded if the trial court concludes its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury).

[10] *McAllister v. State*, 351 Ga. App. 76, 81 (1) (830 SE2d 442) (2019) (footnotes and punctuation omitted); *accord Brown v. State*, 303 Ga. 158, 162 (2) (810 SE2d 145) (2018).

[11] *Benning v. State*, 344 Ga. App. 397, 402 (810 SE2d 310) (2018) (punctuation omitted); *accord Brown*, 303 Ga. at 161 (2); *McAllister*, 351 Ga. App. at 81 (1).

should be used only sparingly since it permits the trial court to exclude concededly probative evidence."[12]

In this case, the trial court considered the prior-bad-acts evidence that Mulkey sexually abused S. M., noted that Rules 413 and 414 strongly presume inclusion, and determined the probative value of that evidence was not substantially outweighed by its prejudice. And indeed, the facts underlying the dismissed charges that Mulkey sexually abused S. M. were *strikingly similar* to the facts underlying the charges that he sexually abused D. H., the approximately eight years between those incidents were not unduly remote, and Mulkey's primary defense—which was based on questioning D. H.'s credibility—increased the State's need to admit his prior bad acts.[13]

---

[12] *State v. Atkins*, 304 Ga. 413, 423 (2) (c) (819 SE2d 28) (2018) (punctuation omitted); *accord State v. Jones* , 297 Ga. 156, 164 (3) (773 SE2d 170) (2015).

[13] *See McAllister*, 351 Ga. App. at 84-85 (1) (c) ("It is true, of course, that when the defendant seeks to attack a victim's credibility, the State has an increased need to introduce evidence of prior acts."); *Burgess v. State*, 349 Ga. App. 635, 643 (3) (824 SE2d 99) (2019) (holding that span of approximately 12 years "was not too remote to erode the probative value of the prior conviction" that was identical to the charges at issue (punctuation omitted)), *disapproved on other grounds by Hill v. State*, 360 Ga. App. 143 (860 SE2d 893) (2021); *Benning*, 344 Ga. App. at 402-03 (holding that evidence of defendant's prior sexual assaults was admissible under Rule 413 as defendant's manner of past abuse was sufficiently similar to the charged sexual assaults with his girlfriend, prior sexual assaults bolstered girlfriend's credibility by showing her circumstances were not unique, prior sexual assaults were not too remote to be admissible).

11

Consequently, we do not agree the trial court abused its discretion in admitting the evidence of Mulkey's prior bad acts.

Furthermore, we would be remiss in failing to note that Mulkey's Rule 403 argument faces an additional obstacle: The Supreme Court of Georgia has already explicitly held that even an *acquittal* of similar charges does not bar admission of them under Rule 404.[14] Even so, Mulkey gamely attempts to circumvent this precedential hurdle by relying on a federal district court's opinion, *United States v. Brown*.[15] In *Brown*, the district court held that while the government may not reindict the defendant for the same offense following the dismissal of an earlier indictment on speedy trial grounds under the Sixth Amendment, it can still use the underlying facts of that offense as the basis for similar-acts evidence under Federal Rule of

---

[14] *See Atkins*, 304 Ga. at 419-21 (2) (b) (i) (holding that Double Jeopardy Clause arising out of defendant's acquittal in a prior murder case did not bar the State from presenting evidence of prior acts for which defendant was previously acquitted); *Hamlett v. State*, 350 Ga. App. 93, 100 (2) (828 SE2d 132) (2019) (explaining that "the admission of other acts evidence under OCGA § 24-4-404 (b) is not limited to conduct resulting in a conviction"); *see also Dowling v. United States*, 493 U.S. 342, 348 (II) (A) (110 SCt 668, 107 LE2d 708) (1990) (declining to extend "the collateral-estoppel component of the Double Jeopardy Clause to exclude in all circumstances relevant and probative evidence that is otherwise admissible under the Rules of Evidence simply because it relates to alleged criminal conduct for which a defendant has been acquitted" (punctuation omitted)).

[15] 90 FSupp2d 841 (E.D. Mich. 2000).

12

Evidence 404 (b).[16] And while the district court ultimately admitted the challenged evidence in *Brown*, Mulkey maintains the district court's reasoning nevertheless supports the opposite conclusion in this matter. Specifically, Mulkey claims the evidence was admissible in *Brown* because the district court properly relied upon Rule 404 (b) to limit the purpose for which the jury could consider it.[17] And he asserts that in stark contrast, under Rules 413 and 414, the evidence of his prior bad acts could be admitted for *any* purpose and, thus, the prejudice arising from his inability to defend himself against this evidence was exacerbated. This argument is a nonstarter.

First and foremost, to state the obvious, we are not bound by the reasoning or holding of a federal district court's decision.[18] And in any event, neither *Brown's*

---

[16] *See id.* at 845 (II) (B) (explaining that "the Speedy Trial Clause poses no obstacle to the admission of evidence of the [facts underlying defendant's earlier indictment] under Rule 404 (b)").

[17] *See id.* at 845 (II) (B) (noting that "when 404 (b) evidence is appropriately offered and admitted solely for the purposes permitted under the Rule, there can be no concern that a defendant might face conviction for the 'other acts' encompassed in such evidence").

[18] *See Clark v. State*, 149 Ga. App. 641, 645-46 (255 SE2d 110) (1979) (noting that Georgia appellate courts are not bound by the decisions of federal district courts); *Allen v. State Pers. Bd.*, 140 Ga. App. 747, 749 (231 SE2d 826) (1976) (same).

reasoning nor holding supports Mulkey's argument. As the trial court aptly noted, Mulkey's claim that he was not able to defend against S. M.'s allegations because crucial exculpatory witnesses were no longer available does not withstand close scrutiny. Indeed, Mulkey never proffered that *any* of the unavailable witnesses could have provided exculpatory testimony but, rather, only that they would have testified to not noticing anything about his relationship with S. M. to be out of the ordinary. Moreover, Mulkey's contention that forcing him to defend against allegations that can be admitted for any purpose under Rules 413 and 414 is fundamentally unfair ignores the primary holding in *Brown*, in which the district court concluded "[i]t can hardly be contended that conduct which is the subject of a charge dismissed on procedural (albeit constitutional) grounds should be afforded greater due process protection than conduct which is the subject of an actual trial and acquittal."[19] Accordingly, the trial court did not err in admitting Mulkey's prior bad acts into evidence.

2. Mulkey also contends the trial court erred in refusing to provide the jury with a limiting instruction regarding the evidence of his prior bad acts. This contention likewise lacks merit.

---

[19] *Id.* at 848 (II) (C).

As our Supreme Court has explained, for a requested jury instruction to be warranted, it "must be legal, apt, and precisely adjusted to some principle involved in the case."[20] Simply put, the only requirement regarding jury charges is that "they are correct statements of the law and, as a whole, would not mislead a jury of ordinary intelligence."[21] And, as always, we review jury charges *de novo*.[22]

Here, prior to trial, Mulkey submitted a written jury charge request concerning prior acts evidence, which indicated the jury was only permitted to consider such evidence as it related "to intent and identity." But during the initial charge conference, the trial court informed Mulkey it would not give this charge because it did not apply, explaining that Rules 413 and 414 allow the jury to "receive evidence of these other sexual acts for any purpose they want to take it for . . ." Then, after the defense rested, the trial court revisited the issue in a brief, second conference, and Mulkey acknowledged the lack of any caselaw requiring a limiting instruction for

[20] *Harrison v. State*, 310 Ga. 862, 866 (2) (855 SE2d 546) (2021) (punctuation omitted); *accord Barron v. State*, 297 Ga. 706, 708 (2) (777 SE2d 435) (2015).

[21] *Hines v. State*, 350 Ga. App. 752, 759 (2) (830 SE2d 380) (2019) (punctuation omitted); *accord Matos-Bautista v. State*, 353 Ga. App. 773, 777 (1) (839 SE2d 260) (2020).

[22] *Hines*, 350 Ga. App. at 759 (2); *accord Matos-Bautista*, 353 Ga. App. at 776 (1).

15

evidence admitted under Rules 413 and 414. So, slightly changing tack, Mulkey then requested the court provide the following instruction: "The defendant is not on trial here for any acts or crimes not alleged in the indictment in that case, superseding indictment, and cannot be convicted of the crimes charged in the indictment, superseding indictment, if the jury were to find only that the defendant committed other crimes at some time." But the trial court again refused the request, citing language in *Cook v. State*,[23] which held that, under OCGA § 24-4-413, it was not required to give a limiting instruction.[24]

Now, Mulkey argues the trial court erred in refusing to provide the limiting instruction he orally requested—rather than his written request—at the time the court revisited the issue. Specifically, he asserts the court erred in relying on *Cook*, claiming in that case, the trial court did, in fact, provide a limiting instruction prior to the testimony of one of the Rule 413 witnesses and provided that same instruction again during its final charge to the jury.[25] But this omitted detail in no way supports

---

[23] 338 Ga. App. 489 (790 SE2d 283) (2016).

[24] *See id.* at 494 (3) (a) (explaining that under OCGA § 24-4-413, "evidence of the accused's commission of another offense of sexual assault shall be admissible and may be considered for its bearing on any matter to which it is relevant").

[25] *See id.* at 493-94 (3) (a).

Mulkey's argument that the trial court erred in *this* matter. Indeed, in *Cook*, the trial court did—as Mulkey claims—provide the aforementioned limiting instruction, but on appeal, the defendant argued his trial counsel rendered ineffective assistance by failing to request that same instruction *also* be given contemporaneously prior to the last of three Rule 413 witnesses.[26] And it was within that context this Court—in rejecting the defendant's ineffective assistance claim—recognized the trial court twice provided the limiting instruction, but further explained that, because such instruction was not required by OCGA § 24-4-413, "an objection requesting a limiting instruction would have been meritless."[27] Given these circumstances, the trial court, here, did not err in refusing to provide Mulkey's limiting instruction.[28]

---

[26] *See id.*

[27] *Id.* at 494 (3) (a).

[28] *See Ary v. State*, 359 Ga. App. 563, 569-70 (3) (859 SE2d 535) (2021) (concluding that jury instruction stating that Rule 414 evidence could only be considered for limited purposes was erroneous because under OCGA § 24-4-414, other acts evidence "may be considered for its bearing on any matter to which it is relevant" (punctuation omitted)); *Cook*, 338 Ga. App. at 493-94 (3) (a) (explaining that although trial court provided limiting instruction as to the consideration of evidence admitted under OCGA § 24-4-413, such instruction was not required by the statute).

17

Furthermore, Mulkey cannot show the jury was confused by the trial court's refusal to give his requested charge. In determining whether a jury charge is likely to have misled or confused the jury about the elements of a particular crime, we "must consider the charge as a whole, reading all of its parts in conjunction with each other."[29] And here, in its jury charge, the trial court instructed the jurors that (1) the indictment outlined the exact offenses, (2) they should review it, and (3) it would go with them "into the jury room." Additionally, the court instructed the jury regarding the presumption of innocence and that "[t]he burden of proof rests upon the State to prove every material allegation of the indictment and every essential element of the crime or crimes charged beyond a reasonable doubt. Later, the court defined in detail the charges *in the indictment* and explained that it was the jury's responsibility to determine whether Mulkey committed the acts charged beyond a reasonable doubt. Considering the charge as a whole, the trial court's refusal to give a limiting instruction ]regarding the prior bad acts evidence did not constitute reversible error.[30]

---

[29] *Ary*, 359 Ga. App. at 571 (3) (punctuation omitted).

[30] *See id.* at 570-71 (3) (concluding that despite erroneous jury charge regarding OCGA § 24-4-414 evidence, the trial court's charge as a whole showed the jury was not mislead or confused); *Curry v. State*, 330 Ga. App. 610, 617-18 (2) (768 SE2d 791) (2015) (holding that even if the trial court erred in part of its charge, it cured any defect by instructing the jury that the State must prove every material allegation in the

18

3. Mulkey further contends the trial court erred in failing, *sua sponte*, to admonish the prosecution for making allegedly improper remarks during closing argument. Yet again, we disagree.

During closing argument, the State's prosecutor discussed the prior bad acts evidence, as well as the ultimate dismissal of the charges related to those allegations. And in her concluding remarks on that issue, the prosecutor stated as follows:

> I don't work for the Bartow County District Attorney's office. I can't tell you why it took them two plus years to prosecute a child molestation, but what I can tell you is that this dismissal—and you can read it—was not for lack of evidence. It was not because they didn't believe [S. M.] It was because [defendant's counsel], the same attorney, filed a motion to dismiss on a speedy trial ground and it was granted and [Mulkey] skated on a technicality. He didn't go in court and let a jury listen to the evidence and let a jury make a decision [unintelligible] . . . He skated on a technicality.

---

indictment beyond a reasonable doubt, the jury could only find the defendant guilty if it found beyond a reasonable doubt that he committed the crime charged, and sending the indictment out with the jury during its deliberations); *Wheeler v. State*, 327 Ga. App. 313, 319-20 (3) (758 SE2d 840) (2014) (finding that trial court's jury instructions in their entirety, including that jury could only find the defendant guilty if it found beyond a reasonable doubt that he committed the offenses as described in the indictment, cured any potential error), *overruled on other grounds by Willis v. State*, 304 Ga. 686, (820 SE2d 640) (2018).

19

Mulkey's trial counsel lodged no objection to these remarks, the trial court made no comment concerning them, and the State's prosecutor continued her closing argument.

But now, Mulkey argues the trial court erred in failing to *sua sponte* admonish the State's prosecutor for improperly characterizing the dismissal of the earlier charges for a violation of his right to a speedy trial as "skat[ing] on a technicality." And turning to the relevant statute at issue, OCGA § 17-8-75 provides that when

> counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same. On objection made, the court shall also rebuke the counsel and by all needful and proper instructions to the jury endeavor to remove the improper impression from their minds; or, in his discretion, he may order a mistrial if the prosecuting attorney is the offender.

But a trial judge has no obligation under OCGA § 17-8-75 to "rebuke a prosecuting attorney or give a curative instruction in the absence of a timely objection."[31] Rather, a defendant who fails to object or request a mistrial on the basis of a prosecutor's

---

[31] *Powell v. State*, 291 Ga. 743, 746 (2) (a) (733 SE2d 294) (2012); *accord Smith v. State*, 296 Ga. 731, 736 (2) (b) (770 SE2d 610) (2015).

comments during argument—as Mulkey admittedly failed to do here—waives the claim on appeal.[32] So too here.

4. Finally, Mulkey contends the trial court erred in denying his claim that defense counsel rendered ineffective assistance by failing to object to testimony bolstering D. H. and S. M.'s credibility and also by failing to object to the prosecution's improper remarks during closing argument. Once again, we disagree.

It is well established that to evaluate Mulkey's claims of ineffective assistance of counsel, we apply the two-pronged test established in *Strickland v. Washington*,[33] which requires him to show that his trial counsel's performance was "deficient and that the deficient performance so prejudiced him that there is a reasonable likelihood

---

[32] *See Powell*, 291 Ga. at 746 (2) (a) ("[T]he defendant's failure to object to the State's closing argument waives his right to rely on the alleged impropriety of that argument as a basis for reversal." (punctuation omitted)); *Carr v. State*, 275 Ga. 185, 186 (2) (563 SE2d 850) (2002) ("Inasmuch as appellant did not promptly interpose an objection to the prosecutor's statements or argument or move for a mistrial, he has waived his right to complain on appeal." (citation and punctuation omitted)); *see also Gates v. State*, 298 Ga. 324, 329 (4) (781 SE2d 772) (2016) (concluding that under Georgia's new Evidence Code, plain-error review is not available for prosecutor's allegedly improper remarks made during closing argument and argument is waived if remarks are not objected to below).

[33] 466 U.S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

that, but for counsel's errors, the outcome of the trial would have been different."[34]

Importantly, should a defendant "fail to meet his burden on one prong of this two-prong test, we need not review the other prong."[35] Thus, this burden—though not impossible to carry—is "a heavy one."[36] In addition, there is a strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct, and a criminal defendant must overcome this presumption.[37] In fact, the reasonableness of counsel's conduct is "examined from counsel's perspective at the time of trial and under the particular circumstances of the case[.]"[38] And decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim

---

[34] *Chapman v. State*, 273 Ga. 348, 349-50 (2) (541 SE2d 634) (2001); *see Strickland*, 466 U.S. at 687 (III); *Ashmid v. State*, 316 Ga. App. 550, 556 (3) (730 SE2d 37) (2012).

[35] *McAllister*, 351 Ga. App. at 93 (6); *accord Gomez v. State*, 300 Ga. 571, 573 (797 SE2d 478) (2017); *Lawson v. State*, 365 Ga. App. 87, 95 (3) (877 SE2d 616) (2022).

[36] *Jones v. State*, 292 Ga. 593, 599 (7) (740 SE2d 147) (2013).

[37] *Chapman*, 273 Ga. at 350 (2); *see Cammer v. Walker*, 290 Ga. 251, 255 (1) (719 SE2d 437) (2011) ("A claim of ineffective assistance of counsel is judged by whether counsel rendered reasonably effective assistance, not by a standard of errorless counsel or by hindsight." (punctuation omitted)).

[38] *Lockhart v. State*, 298 Ga. 384, 385 (2) (782 SE2d 245) (2016); *accord Lawson*, 365 Ga. App. at 95 (3).

only if "they were so patently unreasonable that no competent attorney would have followed such a course."[39] Moreover, unless clearly erroneous, this Court will uphold a trial court's factual determinations with respect to claims of ineffective assistance of counsel; "however, a trial court's legal conclusions in this regard are reviewed *de novo*."[40] With these guiding principles in mind, we turn to Mulkey's specific claims of error.

(a) *Improper Bolstering of Credibility.* Mulkey maintains his trial counsel rendered ineffective assistance by failing to object to several instances of bolstering of D. H. and S. M.'s credibility. OCGA § 24-6-620 provides that the "credibility of a witness shall be a matter to be determined by the trier of fact . . . ." Under this rule, the Supreme Court of Georgia has held that, "a witness, even an expert, can never bolster the credibility of another witness as to whether the witness is telling the

---

[39] *Id.*

[40] *Sowell v. State*, 327 Ga. App. 532, 539 (4) (759 SE2d 602) (2014); *accord Duncan v. State*, 346 Ga. App. 777, 783 (2) (815 SE2d 294) (2018), *disapproved on other grounds by Hill v. State*, 360 Ga. App. 143 (860 SE2d 893) (2021); *see Grant v. State*, 295 Ga. 126, 130 (5) (757 SE2d 831) (2014) (holding that "[i]n reviewing a claim of ineffective assistance, we give deference to the trial court's factual findings and credibility determinations unless clearly erroneous, but we review a trial court's legal conclusions de novo").

23

truth."[41] Indeed, credibility of a witness is "not beyond the ken of the jurors but, to the contrary, is a matter solely within the province of the jury."[42] But our Supreme Court has also explained that "[w]hen a witness's statement does not directly address the credibility of another witness, . . . there is no improper bolstering."[43] And when appellate courts evaluate "whether testimony constitutes improper bolstering, we consider the disputed testimony in context."[44]

(i) *Bolstering of D. H.'s credibility.* In this matter, the first instance of alleged bolstering of D. H.'s credibility occurred during the testimony of the Douglas County Sheriff's Office investigator. After the State's prosecutor asked the investigator if Candace ever doubted D. H.'s allegations, the investigator responded: "She told me that when [D. H.] first disclosed to her about what happened that she didn't believe her because she thought she was in trouble, that she was only saying it because she

---

[41] *Brown v. State*, 302 Ga. 454, 460 (2) (b) (807 SE2d 369) (2017) (punctuation omitted); *accord Adkins v. State*, 301 Ga. 153, 158 (3) (a) (800 SE2d 341) (2017).

[42] *Brown*, 302 Ga. at 460 (2) (b); *accord Adkins*, 301 Ga. at 158 (3) (a).

[43] *Brown*, 302 Ga. at 460-61 (2) (b).

[44] *Id.* at 461 (2) (b); *see Adkins*, 301 Ga. at 158 (3) (a) ("In considering whether testimony constitutes improper bolstering, we consider the objected-to testimony in context.").

was in trouble. But once [D. H.] started going into some of the details about what happened, then she knew what [D. H.] said was true."

Next, on cross examination, Mulkey's trial counsel inquired as to whether the investigator was aware that Mulkey and Candace kept in contact even after they separated. And when the investigator responded that she was aware of that fact, but then noted the former couple's communications were not the focus of her investigation, trial counsel asked her is she thought it undermined Candace's credibility. Taking issue with what she believed to be a misleading question about the time line, the investigator replied: "No, because she didn't know that her daughter had been molested until then. Why would she not talk to [Mulkey]? I mean, she found out on December 24th. They could have been talking. Prior to that, she had no clue that her daughter was going to disclose that she had been molested by him."

Mulkey argues that his trial counsel rendered ineffective assistance by failing to object to these responses from the investigator, claiming they constituted improper bolstering of D. H.'s credibility. He further contends there was no legitimate strategic reason for this failure, noting that during the hearing on his motion new trial, his trial counsel testified that he "just missed it." We are unpersuaded.

First, the investigator did not, in either of the foregoing instances, directly address the credibility of D. H. Rather, in both instances, the investigator was describing Candace's responses and conduct related to D. H.'s disclosure. Thus, arguably the testimony was not even improper.[45] But even if the investigator's testimony could be considered improper bolstering, there are several reasons a reasonable lawyer might not have lodged an objection to the complained-of testimony.[46] As trial counsel acknowledged, the main defense strategy was to attack the credibility of D. H., and, therefore, it would not have been unreasonable for him to allow testimony in which Candace admitted that D. H. had gotten in trouble for inappropriate behavior just before her outcry; and that within this context, Candace was initially skeptical of her own daughter's accusation.[47] Furthermore, a reasonable

---

[45] *See Wright v. State*, 327 Ga. App. 658, 661 (2) (a) (760 SE2d 661) (2014) ("What is forbidden is opinion testimony that directly addresses the credibility of the victim, i.e., 'I believe the victim; I think the victim is telling the truth[.]'" (punctuation omitted)).

[46] *See Jones*, 292 Ga. at 601 (7) (d) n.7 (noting that "although the thinking of the lawyer may be relevant to our inquiry, we must remember that our inquiry properly is focused on what the lawyer did or did not do, not what he thought or did not think" (punctuation omitted)).

[47] *See id.* at 601 (7) (d) (finding that it was not unreasonable for trial counsel to not object to testimony that arguably bolstered the primary witness's account of the events given that counsel had already highlighted inconsistencies in witness's account

26

trial counsel "might have concluded that the bolstering testimony was not likely to be very harmful, inasmuch as it hardly would have surprised anyone observing the trial to learn that [Candace] believed [D. H.'s] accounts, and any rational juror could have surmised as much without being told explicitly."[48]

Moreover, Mulkey failed to show the complained-of testimony was prejudicial even if his counsel's failure to object amounts to deficient performance.[49] The jurors heard from D. H. and could judge her credibility for themselves, not only through her trial testimony but also through the recording of her forensic interview, which they viewed. Consequently, the State presented other evidence from which the jury could

---

and objection might stress that law enforcement had much confidence in witness, the inconsistencies of her accounts notwithstanding); *Green v. State*, 281 Ga. 322, 323-24 (2) (638 SE2d 288) (2006) (holding that defense counsel asking detective if he believed witness although bolstering was reasonable as counsel "was seeking to undermine the testimony by mocking the detective's belief in a witness whose statements were so inconsistent" (punctuation omitted)).

[48] *Jones*, 292 Ga. at 601-02 (7) (d) (punctuation omitted).

[49] *See Thomas v. State*, 318 Ga. App. 849, 854 (4) (a) (734 SE2d 823) (2012) (explaining that the effect of bolstering should be viewed in context of all the evidence to determine if it had an effect on the outcome on the trial); *see also Stinson v. State*, 352 Ga. App. 528, 542 (4) (835 SE2d 342) (2019) ("[S]ince an appellant claiming ineffective assistance of counsel must show both deficient performance and actual prejudice stemming from that deficiency, an insufficient showing on either of these prongs relieves the reviewing court of the need to address the other prong." (punctuation omitted)).

assess D. H.'s credibility, minimizing any prejudicial effect of the investigator's alleged bolstering.[50] Additionally, the investigator testifying that Candace eventually believed her daughter's disclosure is neither surprising nor damning to Mulkey.[51] Accordingly, the trial court did not err in rejecting Mulkey's claim that his trial counsel rendered ineffective assistance in this regard.

(ii) *Bolstering of S. M.'s credibility.* During the cross examination of Mulkey's witness, Tammy Shaw,[52] the State's prosecutor asked if S. M. had ever discussed

---

[50] *See McNeil v. State*, ___ Ga. App. ___ (3) (c) (i) (871 SE2d 303, 310) (2022) (concluding that defendant was not prejudiced by trial counsel's failure to object to improper bolstering testimony because both of the victim's forensic interviews were played for the jury and State presented additional evidence to allow the jury to weigh credibility); *Zerbarini v. State*, 359 Ga. App. 153, 164 (3) (a) (855 SE2d 87) (2021) (holding that defendant was not prejudiced by his counsel's failure to object to testimony allegedly bolstering victim's credibility given that the victim testified and the State presented other evidence from which the jury could assess credibility); *Dority v. State*, 335 Ga. App. 83, 93 (2) (780 SE2d 129) (2015) (same).

[51] *See Rozier v. Caldwell*, 300 Ga. 30, 34 (4) (793 SE2d 73) (2016) (concluding that bolstering testimony unlikely to be harmful because it is not surprising that law enforcement would believe the victim's account, "and any rational juror could have surmised as much without being told explicitly"); *Zerbarini*, 359 Ga. App. at 164 (3) (a) (holding that counsel's failure to object to father's testimony did not support an ineffective assistance given that a father believing that his daughter is telling the truth regarding sexual abuse disclosure is neither surprising nor damning to the defendant).

[52] As previously noted, Shaw became S. M.'s guardian when she moved back to Georgia and Bartow County authorities began their investigation.

28

being sexually abused by Mulkey. Shaw responded that S. M. would not really discuss the matter with her and she learned about the details by accompanying S. M. to the legal proceedings. But unprompted, Shaw then added: "But the day the case was dismissed, I went home and told [S. M.] what had happened, and I said it wasn't your fault, I'm proud of you, you know. And she just said that God knows the truth and one day, he won't be able to lie."

Mulkey's trial counsel did not object to this testimony, and during the hearing on Mulkey's motion for new trial, he again testified that his failure to do so was not a strategic decision. Nevertheless, Mulkey's contention that this testimony constituted improper bolstering is even more tenuous than his arguments regarding the investigator's testimony. Shaw's testimony was not a direct comment on S. M.'s credibility but, rather, a recounting of a comment S. M. made and, thus, not improper bolstering.[53] In addition, on direct examination, Shaw testified that S. M. told her she "felt guilty" about "everything that happened" and that she still loved Mulkey. As a result, a reasonable trial counsel might have determined it was a better strategy to refrain from objecting to the foregoing comment of a defense witness, who had

---

[53] *See supra* notes 43-44 & accompanying text.

otherwise provided favorable testimony.[54] Furthermore, with regard to the investigator's testimony allegedly bolstering D. H.'s credibility, the State called S. M. as a witness and admitted her forensic interview from which the jury could assess her credibility, thereby making it unlikely Mulkey suffered any prejudice from Shaw's allegedly improper comment.[55] Given such circumstances, the trial court did not err in rejecting Mulkey's claim that his trial counsel rendered ineffective assistance in this regard either.

(b) *Improper Closing Argument.* Finally, Mulkey contends his trial counsel also rendered ineffective assistance by failing to object to the State prosecutor's remarks during closing argument that he "skated on a technicality" when the Bartow County charges were dismissed because of a violation of his right to a speedy trial. We find this argument unpersuasive as well.

---

[54] *See Jones*, 292 Ga. at 602 (7) (d) (concluding that "to the extent that the bolstering testimony might be harmful, a reasonable lawyer might have concluded that objecting to it could signal to the jury that the defense was worried about such testimony, thereby emphasizing the testimony and magnifying any harmful implications of it."); *Jones v. State*, 364 Ga. App. 490, 495-96 (2) (a) (875 SE2d 465) (2022) (holding that given the fleeting nature of the defense witness's testimony that arguably bolstered victim's credibility, it was not objectively unreasonable for counsel to decide the better tactic was not to draw attention to the testimony even if was objectionable).

[55] *See supra* note 50 & accompanying text.

During the hearing on Mulkey's motion for new trial, his trial counsel testified that he should have objected to the prosecutor's remark that Mulkey "skated on a technicality." And on appeal, Mulkey argues that his trial counsel's failure to object to these remarks—which he claims violated OCGA § 17-8-75—amounted to ineffective assistance. But although Mulkey takes issue with the prosecutor's characterization of a violation of his right to a speedy trial as a technicality, he cites to no caselaw in support of his argument that doing so runs afoul of OCGA § 17-8-75. This is not surprising given that "[a] prosecutor is granted wide latitude in the conduct of closing argument, the bounds of which are in the trial court's discretion."[56] And within that wide latitude, a prosecutor may "comment upon and draw deductions from the evidence presented to the jury."[57]

And during the trial below, the Bartow County investigator testified that the charges related to Mulkey's alleged sexual abuse of S. M. were dismissed because his right to a speedy trial was violated. In fact, a certified copy of that dismissal was admitted into evidence. Then, on cross examination, Mulkey acknowledged that he

---

[56] *Booth v. State*, 301 Ga. 678, 688 (4) (804 SE2d 104) (2017) (punctuation omitted); *accord Scott v. State*, 290 Ga. 883, 885 (2) (725 SE2d 305) (2012).

[57] *Booth*, 301 Ga. at 688 (4) (punctuation omitted); *accord Johnson v. State*, 296 Ga. 504, 508 (4) (769 SE2d 87) (2015).

31

was never tried on the Bartow County charges but that they were dismissed because of "[a] speedy trial issue or something." Thus, while the prosecutor's argument equating a constitutional violation to a technicality was perhaps hyperbolic, it was essentially shorthand for explaining that Mulkey was never tried or acquitted on the Bartow County charges and did not stray beyond the wide latitude afforded to prosecutors when drawing inferences from evidence presented to the jury.[58] Consequently, even if Mulkey's trial counsel had objected, such an objection would have been futile, and "[f]ailure to pursue a futile [objection]does not constitute ineffective assistance."[59]

For all these reasons, we affirm Mulkey's conviction and the denial of his motion for new trial.

---

[58] *See Arnold v. State,* 309 Ga. 573, 577 (2) (a) (847 SE2d 358) (2020) (explaining that when there was evidentiary basis for inference made during closing argument, counsel's failure to object did not give rise to ineffectiveness claim); *Martin v. State*, 306 Ga. 538, 543 (3) (832 SE2d 402) (2019) (holding that prosecutor's characterization of defendant as a liar was embedded in her argument summing up discrepancies between his version of events and evidence at trial and as such, the comments were within the ambit of permissible closing argument by the prosecutor).

[59] *Hall v. State*, 351 Ga. App. 695, 702 (2) (832 SE2d 669) (2019) (punctuation omitted); *see Ventura v. State*, 284 Ga. 215, 218 (4) (663 SE2d 149) (2008) (holding that "[t]he failure to pursue a futile objection does not amount to ineffective assistance").

*Judgment affirmed. Mercier and Markle, JJ., concur.*